IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

## STATE OF TENNESSEE v. GREGORY LEE SMITH

**Direct Appeal from the Circuit Court for Madison County
No. 05-675    Roy B. Morgan, Jr., Judge**

---

**No. W2006-01962-CCA-R3-CD  - Filed October 26, 2007**

---

Defendant, Gregory Lee Smith, was indicted for aggravated rape.  Following a jury trial, he was convicted of the lesser included offense of aggravated sexual battery, a Class B felony.  The trial court sentenced Defendant as a Range I, standard offender, to twelve years.  On appeal, Defendant challenges the sufficiency of the convicting evidence and argues that the sentence imposed by the trial court is excessive.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Benjamin C. Mayo, Jackson, Tennessee, for the appellant, Gregory Lee Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Background

The minor victim, L.C., will be referred to by her initials.  L.C. testified that she was fourteen years old at the time of the incident and lived with her mother, Emma Smith; her stepfather, Defendant; and her uncle, Willie Clark.  On July 2, 2005, L.C. was alone in the house with Defendant while Ms. Smith was at work, and Mr. Clark had gone to the store.  Defendant came into the room where L.C. was lying on the couch and asked for the telephone.  Defendant walked over to the couch when L.C. did not answer.  L.C. said Defendant touched her in the vaginal area.  L.C. asked Defendant what he was doing.  Defendant did not respond and tried to unbutton L.C.'s blue jean shorts.  L.C. said that she started kicking at Defendant and struck him in the face with her foot.  Defendant removed L.C.'s clothes and threw her on the floor.

L.C. stated that Defendant "started shoving his penis" in her as she continued to fight. L.C. said Defendant's penis was not inside her vagina for a long time. Defendant told L.C. that he was not going to do anything to make L.C. pregnant. Defendant then removed his penis and began biting L.C. in the vaginal area which L.C. said was painful. L.C. said she tried to get away from Defendant, but every time she moved, Defendant moved with her, and then Defendant "just stopped." L.C. said that Defendant did not ejaculate during the incident.

L.C. went in the bathroom, removed her clothes, and took a bath. Defendant stood outside the bathroom door and told L.C. not to tell anyone. Before the incident, L.C. had arranged to go shopping with her cousin, Blondale DeMoss. L.C. heard Ms. DeMoss honk her car horn and went outside. L.C. was crying and told Ms. DeMoss that "it hurt." Ms. DeMoss led L.C. back into the house and examined L.C.'s vaginal area in L.C.'s bedroom. L.C. left with Ms. DeMoss, and the two women tried to find L.C.'s mother. When they could not locate Ms. Smith, Ms. DeMoss drove L.C. to the emergency room.

L.C. said that the hospital staff gave her medication which made her sleepy. The hospital staff also performed a rape kit. L.C. remembered talking with Sergeant Larry Brown at the hospital and telling him what she had been wearing when the incident occurred.

On cross-examination, L.C. said that her uncle and his friend, Roderick Diggens, returned to the residence right after Ms. DeMoss arrived. L.C. said she did not tell Mr. Clark about the incident. L.C. acknowledged that she did not call 911 because her cousin had arrived. L.C. denied having any trouble with Defendant in the past but acknowledged that her brother, Lavonta Cook, had previously had physical altercations with Defendant.

Dr. Mike Ravelle was the attending physician at the Jackson-Madison County General Hospital's emergency room when L.C. arrived. Dr. Revelle testified that L.C. was very upset, and she did not want to be examined or questioned about the incident. Dr. Ravelle told L.C. that he needed to know what had happened in order to treat her properly. L.C. reported that Defendant began touching her inappropriately while she was sleeping on the couch, and then attempted to penetrate her vaginally with his penis. Dr. Ravelle said that L.C. told him that she tried to fight off Defendant, but that Defendant bit her in the vaginal area. L.C. said that she had taken a bath and changed clothes before coming to the emergency room.

Dr. Ravelle said that it was necessary to sedate L.C. in order to perform a rape kit. A blood sample and vaginal swab were taken. Dr. Ravelle said that there was almost no chance of finding any evidence because L.C. had bathed immediately after the incident, and Defendant had not ejaculated. Dr. Ravelle said that L.C.'s physical examination revealed a great deal of swelling in the vaginal area. Dr. Ravelle did not notice any teeth marks but stated that the redness and swelling were consistent with some type of pinching or biting.

Phyllis Taylor, a nurse with the hospital, testified that L.C. was very tearful and anxious when she arrived at the emergency room, and a sedative was administered in order for the doctor to

perform an examination. Ms. Taylor examined L.C.'s external vaginal area. She described the area as very swollen and red, and she noted an abrasion. Ms. Taylor said the physical examination was consistent with L.C.'s description of the sexual assault.

Larry Brown testified that he was a sergeant with the Madison County Sheriff's Department at the time of the incident. Sergeant Brown spoke with L.C. briefly in the hospital but could not take her statement because L.C. had been sedated. Sergeant Brown took custody of the rape kit which was subsequently sent to the T.B.I. for analysis.

Sergeant Brown went to L.C.'s residence, but no one was home. He located Ms. Smith and accompanied her back to the residence. Ms. Smith gave her consent for Sergeant Brown to take the clothes that L.C. had been wearing at the time of the incident. Ms. Smith had not seen Defendant before she left for work that day, but she allowed Sergeant Brown to take the pair of blue jeans Defendant had been wearing the last time Ms. Smith saw him.

Sergeant Brown said that he could not locate Defendant that weekend. On Monday morning, July 5, 2005, Sergeant Brown received a telephone call from Defendant's sister informing him that she would be bringing Defendant to the sheriff's department. When he arrived, Sergeant Brown read Defendant his *Miranda* rights, and Defendant signed a waiver of those rights. The department's nurse took a sample of Defendant's blood. Sergeant Brown stated that Defendant had a laceration on the inside of his right upper lip, a scratch on his left check, and some ointment on a scratch on his right shoulder.

On cross-examination, Sergeant Brown acknowledged that Defendant was cooperative during the interview and offered no resistance to being examined or offering a blood sample. Defendant gave a statement denying that he had committed the offense.

Agent Donna Nelson, a forensic scientist with the T.B.I., performed a DNA analysis on the clothing samples provided by the sheriff's department. Agent Nelson said that no trace of semen was found on the victim's clothing. Agent Nelson detected blood on Defendant's blue jeans, but the sample was too small or too degraded for DNA testing. On cross-examination, Agent Nelson acknowledged that she did not test for the presence of saliva because the victim had bathed immediately after the offense.

Blondale DeMoss testified that she spoke with L.C. by telephone on July 2, 2005, and arranged to pick L.C. up for a shopping trip. Ms. DeMoss said that she stopped at a gasoline station and arrived at L.C.'s house about fifteen or twenty minutes after the call. Ms. DeMoss said that she did not have cell phone service while she was at the gas station but noted that she had missed two calls from L.C.'s phone number during that twenty-minute interval.

When Ms. DeMoss arrived at L.C.'s house, L.C. was crying and upset. Ms. DeMoss repeatedly asked L.C. what was wrong. L.C. finally told Ms. DeMoss that "it hurt" and pointed to her vaginal area. Ms. DeMoss accompanied L.C. to her bedroom. Defendant was sitting at the

kitchen table. L.C. laid down on her bed and removed her shorts and underwear. Ms. DeMoss said that L.C.'s vaginal area was swollen and she was bleeding. Ms. DeMoss and L.C. left the residence and tried unsuccessfully to find Ms. Smith. Ms. DeMoss then drove L.C. to the emergency room. Ms. DeMoss said that L.C. was very upset and had to be held down during the examination.

Ms. DeMoss said that she did not say anything to Defendant. Defendant, however, told Ms. DeMoss as she was leaving with L.C., that Ms. DeMoss could take L.C. "wherever you want." Defendant told Ms. DeMoss that he had not touched L.C. On cross-examination Ms. DeMoss acknowledged that L.C. had not told her that Mr. Clark had been in the residence earlier that day.

Defendant testified on his own behalf and denied committing the offense. Defendant stated that Roderic Diggens dropped him off at the residence at approximately 1:00 p.m. when his shift was over. Defendant said that he did not know L.C. was in the house. Mr. Clark left with Mr. Diggens to purchase some beer. Defendant said that he did not see L.C. until after he had taken a bath. Defendant denied that he spoke with L.C. that afternoon.

Defendant said that L.C.'s brother arrived at the residence about five minutes after Ms. DeMoss and L.C. had left. Mr. Clark told Defendant that Mr. Cook was armed. Defendant went into the bedroom and locked the door. Defendant said that Mr. Cook started beating on the bedroom door, and Defendant ran into the bathroom and climbed out the window. Defendant tried to run away but became winded. Mr. Cook caught up with him and kicked Defendant in the mouth with his shoe. Defendant said that he told Sergeant Brown about his encounter with Mr. Cook, and Sergeant Brown took notes about the incident.

Defendant said that he agreed to submit to any type of testing because he did not have anything to hide. Although not entirely clear from the transcript, Defendant said that he waited until Monday to turn himself in because he was waiting on his paycheck.

On cross-examination, Defendant said that he noticed L.C. on the couch when he opened the front door. Defendant said he sat at the kitchen table. Defendant did not notice if L.C. was crying, and he did not see Ms. DeMoss go with L.C. into L.C.'s bedroom. Defendant said that Ms. DeMoss pointed a knife at him as she was leaving with L.C. and asked him what had he done to L.C. Defendant told Ms. DeMoss that he had not done anything. Defendant agreed that he had no reason to doubt Dr. Revelle's and Ms. Taylor's testimony about the results of L.C.'s physical examination.

Defendant insisted that the injuries on his face were inflicted by Mr. Cook. Defendant said when Mr. Cook stopped hitting him, he said, "I told her I was gonna kill you." Defendant said that Mr. Cook shot at the bedroom door, and Defendant saw the bullets pierce the wood.

Sergeant Brown testified that he followed up on Defendant's report of Mr. Cook's assault. Sergeant Brown said that there were no bullet holes in the bedroom door. Sergeant Brown stated that he observed an open bedroom window on his first trip to L.C.'s residence. On cross-examination, Sergeant Brown agreed that this was the first time that he heard about Ms. DeMoss

pointing a knife at Defendant. Defendant's statement did not mention this fact. Sergeant Brown said he went over the statement with Defendant three times to make sure it was correct.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support a finding beyond a reasonable doubt that any sexual assault against L.C. occurred. Alternatively, Defendant argues that there was no evidence that the offense was committed for the purpose of sexual arousal or gratification.

In reviewing Defendant's challenge to the sufficiency of the evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of the offense of aggravated sexual battery which is defined as the "unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . when the defendant causes bodily injury to the victim." T.C.A. § 39-13-504(a)(2). "Bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain . . . ." *Id.* § 39-11-106(a)(2). "'Sexual contact' includes the intentional touching of the victim's ... intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). "Intimate parts" includes the victim's primary genital area. *Id.* § 39-13-501(2). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § 39-11-302(a).

Defendant submits that there was no physical evidence linking him to the commission of the offense, and the State's case rested solely on L.C.'s testimony which, Defendant argues, contains sufficient inconsistencies to cast a reasonable doubt upon his guilt. Specifically, Defendant contends that L.C. lied to Ms. DeMoss when she told Ms. DeMoss during a telephone conversation before the incident that she was home alone when, in fact, Mr. Clark was at the house before Defendant arrived. Defendant points out that L.C. did not identify Defendant as the perpetrator until Ms. DeMoss asked

L.C. why she was hurting. Defendant also submits that there was evidence that L.C.'s brother had acted aggressively towards Defendant in the past.

Viewing the evidence in a light most favorable to the State, L.C. testified that she was asleep on the couch when Defendant began inappropriately touching her. L.C. struggled with Defendant. Defendant removed L.C.'s clothes and threw her to the floor. Defendant attempted to penetrate L.C. vaginally with his penis and was successful for a short time. Defendant then began biting L.C. on the vaginal area as she continued to struggle. Both Dr. Ravelle and Ms. Taylor testified that the redness and swelling in L.C.'s vaginal area was consistent with the type of sexual assault described by L.C.

Although Defendant denied committing the offense, any inconsistencies in L.C.'s testimony were obviously resolved in favor of the State in light of the jury's verdict. Indeed, it is well established that the testimony of a victim alone is sufficient to support a conviction. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). As noted above, questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See State v. Evans*, 108 S.W.3d 231, 236 (Tenn. Crim. App. 2003). Therefore we conclude that the victim's testimony alone was sufficient evidence for a jury to find the Defendant guilty of the offense with which he was charged

Defendant argues that the evidence supports a finding that the offense was "a violent attack motivated by a history of humiliation and violence suffered by [Defendant] at the hands of [the victim's] family members," and not for the purpose of sexual arousal or gratification. L.C.'s testimony concerning Defendant's relationship with her family was vague and somewhat inconsistent. L.C. first said that she had "maybe" had trouble with Defendant before the incident, and then she denied that she had ever had any problems with him. L.C. said that "probably" her brother or some other family member had struck Defendant in the past, but she had never witnessed such conduct. L.C. then denied that anyone "picked on" Defendant.

Nonetheless, viewing the evidence in favor of the State, Defendant was left alone with L.C. when Mr. Clark and Mr. Diggens went to the store. L.C. was asleep when Defendant initiated the inappropriate contact. Defendant removed all of L.C.'s clothes and told her that he would not do anything that would make her pregnant. When he was unable to sustain penile penetration, Defendant began biting L.C. in the vaginal area. Defendant stood outside the bathroom while L.C. bathed and told L.C. not to tell anyone about the incident.

Based on the foregoing, we conclude that the jury could reasonably find that Defendant intentionally penetrated L.C. vaginally with his penis and touched her on her vaginal area with his mouth, for the purpose of sexual arousal or gratification. *See State v. Hayes*, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995) (noting that intent in sexual battery cases is often proved by circumstantial evidence, including conditions under which the touching occurred); *see also State v. Meeks*, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) ("We recognize that jurors may use their common

knowledge and experience in making reasonable inferences from evidence."). Finally, we note that the statute only requires an intentional touching that can be "*reasonably construed* as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6) (emphasis added); *see also State v. Wesley Earl Brown*, No. M2003-02804-CCA-R3-CD, 2005 WL 1412088, *6 (Tenn. Crim. App., at Nashville, June 16, 2005), *perm. to appeal denied* (Tenn. Dec. 5, 2005) (citing *State v. Roy Chisenhall*, No. M2003-00956-CCA-R3-CD, 2004 WL 1217118, at *3 (Tenn. Crim. App., at Nashville, June 3, 2004). Thus, we conclude that the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of aggravated sexual battery. Defendant is not entitled to relief on this issue.

## III. Sentencing Issues

At the sentencing hearing, the State relied on Defendant's presentence report and L.C.'s victim impact statement, both of which were introduced as exhibits without objection. Defendant did not offer any evidence at the sentencing hearing.

According to the pre-sentence report, Defendant was fifty-three years old at the time of the sentencing hearing. Defendant dropped out of school after completing the ninth grade and acknowledged that he could not read or write. Defendant reported various health problems and said that he was taking medication for depression and insomnia. Defendant denied using drugs but acknowledged that he had previously consumed whiskey on weekends. Defendant reported both successful and unsuccessful efforts in various alcohol rehabilitation programs. Defendant said that he had received psychiatric treatment in the past. Defendant reported that he had not worked in the past ten years other than yard work and odd jobs and received social security disability benefits.

Defendant has numerous prior misdemeanor convictions for public intoxication, vandalism, aggravated criminal trespass, simple possession of cocaine, evading arrest, resisting arrest, assault, harassment, and two DUI convictions. Defendant was convicted of aggravated burglary in 1996 and was sentenced to three years. His sentence was suspended, and Defendant was placed on probation. Defendant was charged with two counts of assault in 2000 against L.C. and Ms. Smith. Defendant was convicted on another assault charge on January 1, 2005. He was sentenced to eleven months, twenty-nine days, all suspended, and Defendant was placed on probation. Defendant was on probation for this assault conviction when he committed the current offense. Defendant's probation for this assault conviction was revoked on November 14, 2005 and reinstated after ninety days.

L.C. wrote in her victim statement that she was still grieving the recent loss of her eighteen-year-old brother in an automobile accident when the sexual assault occurred. L.C. wrote:

> During the attack, I could not believe what was happening. I did not understand why Gregory Smith would want to hurt me. I continually begged him to stop, but he didn't. I fought back as hard as I could, but still he didn't stop. When he finally did decide to stop, I had already been violated – sexually assaulted and bitten on my

vagina. I was in pain, both physically and emotionally. I have not been the same person since.

L.C. described the loss of her sense of security and trust and reported fears that Defendant might return to hurt her or her mother again.

At the conclusion of the sentencing hearing, the trial court found that enhancement of Defendant's sentence was appropriate based on the presence of enhancement factor (1), Defendant has a previous history of criminal convictions; factor (7), the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; factor (13), Defendant was on probation when he committed the current offense; and factor (14), Defendant abused a position of private trust. T.C.A. §§ 40-35-114(1), (7), (13), and (14). The trial court did not find that any mitigating factors were applicable. The trial court stated, "I also note that and find specifically [that] confinement is necessary in this case to protect society, of course, by restraining this Defendant, and it's mandatory he be restrained." The trial court found that a sentence of twelve years was appropriate in this case.

On appeal, Defendant does not challenge the applicability of enhancement factors (1), (13), and (14) but argues that the trial court erred in applying enhancement factor (7) because gratification of a defendant's desire for pleasure or excitement is an essential element of the offense of aggravated sexual battery. *Id*. § 40-35-114(7). Defendant also contends that the trial court erred in not considering as a mitigating factor the fact that he did not cause the victim serious bodily injury. *Id*. § 40-35-113(1).

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." *Id*. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. *Id*. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his

or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

Defendant was convicted of aggravated sexual battery which is a Class B felony. T.C.A. § 39-13-504(b). The offense occurred on July 2, 2005, and Defendant was sentenced under the new law effective for all offenses occurring after June 6, 2005. *Id*. § 40-35-210. As a Range I, standard offender, Defendant's sentence falls within a range between eight and twelve years. *Id*. § 40-35-112(a)(2). The trial court is required to sentence Defendant within the applicable range with consideration of certain advisory guidelines, including the adjustment of the length of the sentence, as appropriate, by the presence or absence of mitigating and enhancement factors. *Id*. § 40-35-210(c).

The State argues initially that the 2005 amendments to the Criminal Sentencing Reform Act of 1989 eliminated a criminal defendant's statutory right to appeal a trial court's application of one or more statutory enhancement factors in determining the length of the defendant's sentence.

Both before and after the 2005 amendments, the Criminal Sentencing Reform Act provided that a "defendant in a criminal case may appeal from the length, range or the manner of service of the sentence imposed by the sentencing court." T.C.A. § 40-35-401(a) (2005) and (2004). The 2005 amendments provide that an appeal must be related to one or more of the following grounds:

> (1) [t]he sentence was not imposed in accordance with this chapter; (2) [t]he sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or (3) [t]he sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103."

*Id*. § 40-35-401(b) (2005).

Prior to the 2005 amendment to section 40-35-401, subsection (b)(2) read: "The enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." The State argues that by eliminating the phrase, "[t]he enhancement and mitigating factors were not weighed properly," and making the statutory enhancement factors advisory only, the Tennessee General Assembly evidenced an intent to eliminate appellate review of a trial court's application of enhancement factors in determining the length of a criminal defendant's sentence.

The 2005 amendments arose out of a concern by the Tennessee General Assembly that the provisions of Tennessee's Criminal Sentencing Reform Act of 1989 violated a defendant's constitutional Sixth Amendment right to trial by jury as contemplated by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004) and its progeny. *See also Cunningham v. California*, 549 U.S. ----, 127 S.Ct. 856 (2007); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). Thus, the 2005 amendments abandoned a statutory presumptive minimum sentence and directed a trial court to impose a sentence within the applicable range. The

2005 amendments set forth certain "advisory sentencing guidelines" which the trial court is required to consider but is not bound by. These include:

> (1) [t]he minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) [t]he sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *State v. Goodman*, 90 S.W.3d 557, 563 (Tenn. 2002). Our supreme court has directed that:

> [l]egislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language. *Alford*, 970 S.W.2d at 946; *Carter*, 952 S.W.2d at 419. Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity exists which requires further inquiry to ascertain legislative intent. *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn.1998). The language employed must be considered in the context of the entire statute, and the component parts of a statute should be construed, if possible, consistently and reasonably. *Alford*, 970 S.W.2d at 946; *Wilson*, 879 S.W.2d at 809. Furthermore, we are to assume that the legislature used each word in the statute purposely, and that the use of these words is intended to convey a meaning and serve a purpose. *Browder*, 975 S.W.2d at 311. Where the language of the statute is clear and plain and fully expresses the legislature's intent, resort to auxiliary rules of construction is unnecessary, and we need only enforce the statute. *Id*.

*Goodman*, 90 S.W.3d at 563-64.

A defendant has the statutory right to appeal a sentence not imposed in accordance with the Criminal Sentencing Reform Act. T.C.A. § 40-35-401(b)(1). Specifically, a defendant may raise as a ground on appeal that his sentence is excessive under the sentencing considerations set forth in section 40-35-210, which section includes a trial court's consideration of enhancement factors in determining the length of a sentence. *Id*. § 40-35-210(c)(2). The trial court is required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(d). Once applied, the

chosen enhancement factor becomes a sentencing consideration subject to review under Tennessee Code Annotated section 40-35-401(c)(2). Thus, Defendant's challenge to the length of his sentences relate to the sentencing considerations set forth in Tennessee Code Annotation section 40-35-210, and we will consider his issue concerning the trial court's application of enhancement factors on the merits.

With respect to the trial court's application of enhancement factors, we must agree with Defendant that the trial court incorrectly applied enhancement factor (7) to his conviction of aggravated sexual battery as that offense necessarily includes the intent to gratify a desire for pleasure or excitement. *See, e.g., State v. Kissinger*, 922 S.W.2d 482, 489-490 (Tenn.1996); T.C.A. § 40-35-114 (authorizing the trial court to consider certain enhancement factors "[i]f appropriate for the offense and if not already an essential element of the offense").

We note initially that Defendant did not ask the trial court to consider any factors in mitigation of his sentence including mitigating factor (1), based on the assertion that Defendant's criminal conduct did not cause or threaten to cause serious bodily injury. Nonetheless, this Court has used the lack of serious bodily injury or the absence of that threat as a proper mitigating factor in aggravated sexual battery cases. *State v. Hayes*, 899 S.W.2d 175, 187 (Tenn. Crim. App.); *State v. Robert Wilson*, No. 03-C-01-9209-CR-00305, 1993 WL 79626, at *4 (Tenn. Crim. App., at Knoxville, March 22, 1993), *no perm. to appeal filed*. This Court has also declined to use this mitigating factor. *State v. Clabo*, 905 S.W.2d 197, 207 (Tenn. Crim. App. 1995) (charges of aggravated sexual battery and aggravated rape); *State v. McKnight*, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994) (refusing to apply mitigating factor when the defendant gave his victims alcohol and sexually abused them resulting in aggravated rape and aggravated sexual battery charges).

While Defendant's conduct did not cause "serious bodily injury" as that term is defined in T.C.A. § 39-11-106(a)(33), it was threatened and could have occurred. "Serious bodily injury" includes bodily injury involving extreme physical pain. *Id*. § 39-11-106(a)(33)(c). The sexual attack was violent as evidence by L.C.'s testimony that Defendant threw her down on the floor. L.C. repeatedly attempted to fight off Defendant's assault, but he bit her in the vaginal area and would not let go. L.C. stated that "[i]t was like his mouth was attached to me." The trial court specifically noted that this was "a very serious case" with "obviously physical trauma" to the victim. Based on our review, we conclude that consideration of this factor in mitigation of the length of Defendant's sentence would be inappropriate under the facts presented in this case.

The presence of the three other enhancement factors are supported by the record. Defendant's prior history of criminal convictions is lengthy and includes two assault charges involving L.C. and her mother. Defendant is L.C.'s stepfather and committed the offense at a time when the two were alone in the home. Defendant committed the offense while he was on probation for another offense. We conclude that the trial court did not err in sentencing Defendant to twelve years. Defendant is not entitled to relief on this issue.
\

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE