IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2019 Session

## STATE OF TENNESSEE v. DAVID ERIC LAMBERT

**Appeal from the Criminal Court for Sullivan County**
**No. S67079     James F. Goodwin, Jr., Judge**

_____

### No. E2018-02298-CCA-R3-CD

_____

The Defendant, David Eric Lambert, appeals his Sullivan County Criminal Court jury convictions for unlawful photography and attempted sexual battery. See Tenn. Code Ann. §§ 39-12-101, -13-505, -13-605. On appeal, the Defendant argues that (1) the trial court erred by denying his motion to dismiss because then Code section 39-13-605 governing unlawful photography was unconstitutionally vague and because his conduct did not constitute a crime; (2) the admission of his statement at trial violated Rule 404(b) of the Tennessee Rules of Evidence; (3) the evidence was insufficient to support his convictions; and (4) the trial court erred by ordering that he serve the eleven-month-and-twenty-nine-day sentences imposed in this case consecutively to each other and to the Defendant's sentence in another case. Because the evidence adduced at trial was insufficient to support the Defendant's conviction for unlawful photography, that conviction is reversed and the charge is dismissed. However, the Defendant's conviction for attempted sexual battery is affirmed, the evidence being sufficient to support that conviction.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part;**
**Reversed in Part**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Lesley A. Tiller (post-trial and on appeal) and Dustin J. Franklin (at trial), Assistant District Public Defenders, for the appellant, David Eric Lambert.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily M. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

The Sullivan County Grand Jury charged the Defendant via presentment with one count of unlawful photography and one count of sexual battery based upon his conduct at a Dollar Tree in Kingsport on March 18, 2016.[1]

1. <u>Motion to Dismiss</u>. Prior to trial, the Defendant moved[2] the trial court to dismiss the unlawful photography charge against him, arguing that then Code section 39-13-605 was unconstitutionally vague. Specifically, he contended that the language of the statute "[was] so broad that it d[id] not provide individuals with adequate notice of proscribed activity and d[id] not provide law enforcement with sufficient guidance to protect against arbitrary and discriminatory enforcement." Alternatively, the Defendant, assuming arguendo that the statute was constitutional, submitted that his conduct could not support a conviction for unlawful photography because "he merely photographed what these women already chose to expose to the public" and because "there [was] no reasonable expectation of privacy in public places." The Defendant surmised that his actions were "not illegal under Tennessee law."

A hearing was held on the Defendant's motion to dismiss the unlawful photography charges. At the hearing on the Defendant's motion to dismiss, the trial court first heard arguments from the parties about the statute's vagueness. Ultimately, the trial court concluded that the statute was constitutional because it was not "so vague that the [D]efendant wouldn't know what conduct" was proscribed given that the statute had other elements that impacted whether the taking of a photograph qualified as a criminal offense. The trial court further determined that the statute did not authorize or encourage arbitrary and discriminatory enforcement.

The trial court then addressed the Defendant's alternative argument about whether his conduct constituted a crime. The trial court heard evidence from various victims and from Kingsport Police Department Detective Martin Taylor.

Detective Taylor testified that after receiving reports of the Defendant's behavior and speaking with several victims, he interviewed the Defendant on March 24, 2016. At

---

[1] The Defendant was charged with unlawful photography in three separate Sullivan County cases each involving a different victim. The two companion cases should be filed contemporaneously herewith.

[2] Both the Defendant's motion to dismiss and the subsequent hearing on the issue covered all three cases. We include only those facts pertinent to the case before us.

the conclusion of the interview, the Defendant provided a statement that Detective Taylor read into the record:

> This all started about [four] or [five] years ago when my father died of cancer. I began videoing women in public. I like blonde-haired females but have no preference. Recently, I have been going to shopping centers in Kingsport and have filmed women in Hobby Lobby, Walmart, Ross, and the shopping center on E[ast] Stone Drive. I did not mean to scare anyone and only filmed the females for my own purposes. I just liked using the video function on my phone. It is kinda like an obsession with the technological aspect of the phone. I have never posted any of the images I have taken on the Internet or shared with other people. I actually did not think I was doing anything wrong because everything was done in a public place. However, I realize this was not a good decision on my part. If it was not illegal, it was definitely crossing moral boundaries. As far as grabbing the woman[']s rear at [the] Dollar Store, I don't recall being there or doing it. This past Saturday, I was at Bed Bath and Beyond in Johnson City. I had been at Ross just before going into Bed Bath and Beyond. When I came out of the store, I was stopped by the police. I did not video anyone in Ross. However, there may have been a couple of videos I took at Bed Bath and Beyond. I told the officer what I did and they confiscated my cell phone. It is a LG G2 phone with a silver case and blue sleeve underneath. I gave the officers permission to look through the phone. Today, I am giving Det[ective] Taylor permission to examine my phone for the videos I have stored on the phone. There should be around [twenty] videos on the phone of different females I have collected recently. I understand the seriousness of the charges against me and need help with the problems I have. I am willing to undergo treatment and with the willingness of the court will do what is necessary to get help for my problem. Again, I am very sorry for all of this and want the women I videoed to know I never meant any harm and apologize for my actions. This is a truthful statement.

Detective Taylor said that he examined the photographs and videos on the Defendant's cellular telephone but found no photographs or videos of any of the victims in the three Sullivan County cases. Detective Taylor further stated that the Defendant's phone had been modified so that duct tape covered the camera lights.

The victim in this case, Shelly Grizzel, testified about her encounter with the Defendant at the Dollar Tree in Kingsport on March 18, 2016. She claimed that she observed the Defendant with a cellular telephone camera positioned within one foot of her bottom and that he had the camera recording her. According to the victim, she could

-3-

see her bottom on the phone's screen. The victim further described that as she attempted to get away from the Defendant, he "grabbed the right side of" her rear end and said, "Nice a--."

In ruling on the Defendant's alternative argument that his conduct did not constitute a crime, the trial court first, referencing the Defendant's statement to Detective Taylor, found that the Defendant had "readily admit[ted] to videoing or filming or taking pictures with his phone of women in public." With regards to this specific case, the trial court noted that the victim testified that the Defendant "held the phone less than a foot from her behind[;] that . . . when she turned around[,] she could see the camera was filming her behind[;] and [that] as she turned to get away[,] [the Defendant] reached out and grabbed her rear end, ma[king] comments about it." Thereafter, the court found that this victim, along with several others, had a reasonable expectation of privacy given the "very, very close proximity to [the victim's] private area[]" from which the Defendant was using his phone to capture the images. The trial court further determined that society was willing to recognize this privacy interest as legitimate. In consequence, the trial court ruled that the issue of the Defendant's guilt was a jury question rather than a question of law and denied his motion to dismiss.

2. Motion in Limine. The day before trial, the Defendant filed a motion in limine, moving the trial court for a hearing out of the presence of the jury to determine the admissibility of certain evidence, including the statement he provided to Detective Taylor and any evidence of other bad acts committed by the Defendant. The trial court held a hearing on the admissibility of the Defendant's statement prior to the beginning of trial.

During the hearing, the Defendant argued that the statement violated Rule 404(b)'s prohibition on propensity evidence, arguing that his general admission to "filming women" was not a specific admission of the charged offense. According to the Defendant, the only specific reference to this particular victim was his statement that he was not present in the Dollar Tree, which was beneficial to him. The Defendant commented that the State was unable to produce any video in relation to this victim and was, therefore, attempting to use the Defendant's general statement to establish the elements of the offense.

The State conceded that the Defendant's statement contained admissions that "could be considered referencing prior bad acts" but argued that "they [were] highly relevant and probative of elements" they would be required to prove, including identity, intent, motive, and lack of mistake. The State contended that because it had no video or photograph of the victim purportedly taken by the Defendant, the Defendant's admissions "that he video[ed] women in public, that he ha[d] a preference for blond[e]-haired females . . . , [and] that he [went] into shopping centers in Kingsport" established his identity as the perpetrator. The State noted that the specific offense at issue involved

-4-

filming a blonde-haired female at a shopping center in Kingsport. In addition, the State commented that identity was at issue because the Defendant, in his statement to Detective Taylor, denied that he was present in the Dollar Tree.

The State further argued that the Defendant's admissions that he took the videos because he was obsessed with the technology available on his phone, that he took the videos "for [his] own purposes" and did not share them publicly, and that his actions "cross[ed] moral boundaries" established his intent. In addition, the State maintained that the Defendant's acknowledgment his actions "cross[ed] moral boundaries" established that he acted for the purpose of sexual gratification as required by the unlawful photography statute. Finally, the State remarked that the Defendant's recognition he had a "problem" which required treatment was indicative of motive, intent, and sexual gratification.

The trial court concluded that the evidence was admissible on the issues of intent and motive. In so concluding, the trial court specifically referenced the following portions of the statement: the Defendant said that he began videoing women in public, that he liked blonde-haired women but had no preference, that he was going to Kingsport shopping centers and filming women, that he did not post the images, that he did not think he was doing anything wrong because he was in a public place, that he realized it was not a good decision, that he crossed moral boundaries, that he gave Detective Taylor permission to examine his phone, that he had approximately twenty videos on the phone of different females collected recently, that he understood the seriousness of the charges, and that he needed help with his problem and was willing to undergo treatment. The court also ruled that the probative value of these admissions was not outweighed by the danger of unfair prejudice. The court ordered that the statement be redacted to exclude the remaining admissions.

3. Trial. The victim testified that on March 18, 2016, she was shopping with her mother at the Dollar Tree on West Stone Drive in Kingsport. She had blonde hair at that time and was fully-clothed, wearing jeans.

The victim described her encounter with the Defendant that day inside the store. The victim said that she was standing near the air fresheners in the back of the store when she "felt like someone was standing really close" to her. She stepped forward, but the individual did as well. She then turned around to look and saw the Defendant, whom she did not know. According to the victim, he had a "really creepy grin" on his face and had his cellular telephone's camera positioned at the right side of her rear end. She estimated that the Defendant had his phone "less than a foot away from" her bottom at that time; he was "extremely close" and "invading [her] personal space."

The victim stated she was able to see the screen of the Defendant's phone. The victim, observing that the phone's camera was enabled and seeing her pants on the screen, realized that the Defendant was filming her. She tried to quickly walk down the aisle away from the Defendant, but he "sped up" and "reached out and grabbed" the right side of her rear end. In so doing, the Defendant said, "Nice a--." After the Defendant grabbed her bottom, the victim hit the Defendant in the face with a can of air freshener, and the Defendant hurried out of the store. The victim indicated that no one else was around her when this incident with the Defendant occurred; however, her mother came "running when [the victim] hollered out" for help.

The victim explained that she did not consent to the Defendant's actions, that his taking a video of her in this manner was embarrassing, and that she expected not to be filmed in that way while shopping at the Dollar Tree. She affirmed her belief that she had "a reasonable expectation" that this would "not happen to [her] in a public place." She was able to identify the Defendant as the perpetrator immediately following the incident, and she made an in-court identification. The victim acknowledged that she had never seen a video of the incident.

Donna Stiltner, the victim's mother, testified that she was with her daughter at the Dollar Tree on March 18, 2016. However, she did not see the incident and only heard her daughter "holler . . . in a loud voice." When she went to her daughter, her daughter said, "He just grabbed me." The victim's mother then saw a man in a brown shirt and jeans walk past her "very abruptly" "with his head ducked," holding a phone in his hand. She recalled that she chased the man out the door "hollering things at him and trying to get him to stop," but he only proceeded to speed up. She chased him into the parking lot, but he disappeared. She left before the police arrived because she had to pick up her husband and grandchildren.

When asked what she remembered from that day about the way the man looked, the victim's mother described him as a white man with a "pretty good suntan," who was of "average build," and had a "pretty square" jawline. She said that he did have a hat on that was pulled down; accordingly, she did not "get a good look at his face." In court, she identified the Defendant as the man she saw that day in the Dollar Tree. She asserted that she did not know the Defendant prior to this time and had no reason "to want to get him in trouble" aside from this incident.

Detective Taylor testified that several days after the incident at the Dollar Tree, he was assigned to investigate this case. He subsequently met with and obtained a statement from the victim on March 22, 2016. He also determined that the Dollar Tree did not have any security camera footage from "inside the store showing the aisles and stuff." He identified the Defendant as a suspect and obtained a written statement from him at the police department on March 24, 2016.

-6-

The Defendant's statement, as redacted previously by the trial court, was admitted into evidence and read to the jury:

> I began videoing women in public. I like blonde-haired females but have no preference. Recently, I have been going to shopping centers in Kingsport and have filmed women[.] I did not mean to scare anyone and only filmed the females for my own purposes. I just liked using the video function on my phone. It is kinda like an obsession with the technological aspect of the phone. I have never posted any of the images I have taken on the Internet or shared with other people. I actually did not think I was doing anything wrong because everything was done in a public place. However, I realize this was not a good decision on my part. If it was not illegal, it was definitely crossing moral boundaries. As far as grabbing the woman[']s rear at [the] Dollar Store, I don't recall being there or doing it. It is a LG G2 phone with a silver case and blue sleeve underneath. I am giving Det[ective] Taylor permission to examine my phone for the videos I have stored on the phone. There should be videos on the phone of different females I have collected recently. I understand the seriousness of the charges against me and need help with the problems I have. I am willing to undergo treatment and will do what is necessary to get help for my problem. Again, I am very sorry for all of this and want the women I videoed to know I never meant any harm and apologize for my actions. This is a truthful statement.

The exhibit entered into evidence was a copy of the Defendant's statement with the inadmissible portions blotted out.

Detective Taylor stated that he subsequently obtained the phone described in the Defendant's statement. He recalled that the phone "had pieces of duct tape torn in small pieces on the outside where the camera area" was located, and he opined that the tape "would block off any lights that might show, like a flash or any external lights on the back side where the camera [was] for that function."

Detective Taylor confirmed that he attempted to retrieve data from the Defendant's phone. According to Detective Taylor, he extracted data from the cell phone using Cellebrite extraction software, but he was unable to get any evidence off of the phone that seemed to depict the victim. Detective Taylor explained that the software was not always able to retrieve all of the data off of a phone. He indicated that sometimes he was "one-hundred percent" successful in recovering all of the deleted items from a phone but that other times he was not.

On cross-examination, Detective Taylor acknowledged that he did not attempt to talk to anyone else who was at the Dollar Tree on the date of the alleged incident. Although the victim had informed Detective Taylor that her mother was with her at the Dollar Tree, he did not interview the victim's mother. He stated that he did speak with the store manager but only about retrieving any possible surveillance video. Additionally, Cellebrite was "the standard software" used by "most law enforcement" at the time, according to Detective Taylor.

The State rested, and following a <u>Momon</u>[3] colloquy, the Defendant elected not to testify and chose to present no proof. Based upon the evidence presented by the State, the jury convicted the Defendant of one count of unlawful photography as charged and one count of attempted sexual battery as a lesser-included offense.

4. <u>Post-trial</u>. Following a sentencing hearing, the trial court imposed a sentence of eleven months and twenty-nine days for each of the Defendant's convictions. It was ordered that the Defendant serve these sentences consecutively to each other, as well as consecutively to an eleven-month-and-twenty-nine-day sentence imposed in one of the other two unlawful photography cases. The court further ordered that the Defendant serve his sentences in confinement.

After denial of the Defendant's motion for new trial, he filed a timely notice of appeal. The case is now before us for our review.

ANALYSIS

On appeal, the Defendant raises the following issues: (1) whether the trial court properly denied his motion to dismiss on grounds that the unlawful photography statute was unconstitutionally vague and that his conduct did not constitute a crime; (2) whether the admission of his statement at trial violated Rule 404(b) of the Tennessee Rules of Evidence; (3) whether the evidence was insufficient to support his convictions; and (4) whether the trial court erred by ordering that he serve the eleven-month-and-twenty-nine-day sentences imposed in this case consecutively to each other and to the Defendant's sentence in the other unlawful photography case. We will address each in turn.

*I. Motion to Dismiss*

The Defendant claims that the trial court erred by denying his motion to dismiss because the proscribing statute was unconstitutional and because his conduct could not

---

[3] Referring to the prophylactic procedure outlined in <u>Momon v. State</u>, 18 S.W.3d 152 (Tenn. 1999), which is designed to ensure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent.

support a conviction of unlawful photography. First, we consider whether these issues were ripe for review via a pretrial motion to dismiss.

Tennessee Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Tenn. R. Crim. P. 12(b)(1). Our supreme court has determined that Rule 12 "is identical to its federal counterpart," Federal Rule of Criminal Procedure 12, and has concluded that matters "substantially founded upon and intertwined with factual evidence of the alleged offense that will necessarily be introduced at trial . . . fall[] within the province of the ultimate finder of fact, and ruling" on such matters "should be deferred until trial." State v. Vickers, 970 S.W.2d 444, 447 (Tenn. 1998) (citations omitted). An "issue is 'capable of determination' under the analogous federal rule if 'the facts surrounding the commission of the alleged offense would be of no assistance in determining' the issue." State v. Sherman, 266 S.W.3d 395, 403 (Tenn. 2008) (quoting United States v. Covington, 395 U.S. 57, 60 (1969)). Although those questions capable of determination tend to "raise questions of law rather than questions of fact," Rule 12 permits the trial court to "make findings of fact necessary to decide the questions of law presented by a pretrial motion so long as the factual findings are not intertwined with the general issue of guilt or innocence." State v. Goodman, 90 S.W.3d 557, 561 (Tenn. 2002) (citations omitted). "Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." Id. (citing Vickers, 970 S.W.2d at 447; State v. Burrow, 769 S.W.2d 510, 512 (Tenn. Crim. App. 1989)). To this end, the trial court "may consider evidence beyond the face of the indictment" so long as the facts to be considered are "relevant only to the legal question presented by the defendant's motion, not to the general issue of guilt or innocence" and do not "qualify as 'factual evidence of the defendant's conduct at the time of the alleged offense.'" Sherman, 266 S.W.3d at 402 (quoting Goodman, 90 S.W.3d at 561). In any event, the trial court's factual findings must "not encroach upon the province of the jury." Id. at 403 (citation omitted).

Applying these principles to the issues presented in this case, we conclude that the trial court properly considered the Defendant's facial challenge to the constitutionality of Code section 39-13-605 and properly declined to consider the Defendant's assertion that his conduct did not satisfy the elements of Code section 39-13-605, including the element of a reasonable expectation of privacy. The latter question was essentially a pretrial challenge to the sufficiency of the State's evidence, which would "be akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence," a procedure that does not exist in criminal cases. See Goodman, 90 S.W.3d at 561.

The Defendant challenges the constitutionality of Code section 39-13-605 on grounds that the phrase "when the individual has a reasonable expectation of privacy" is vague. Essentially, he is asserting a claim that Code section 39-13-605, due to its vagueness, failed to place him on notice that his conduct would violate the statute. The trial court concluded that the statute was not unconstitutional.

At the time of the offense in this case, Code section 39-13-605 provided, in pertinent part, as follows:

> (a) It is an offense for a person to knowingly photograph, or cause to be photographed an individual, when the individual has a reasonable expectation of privacy, without the prior effective consent of the individual, or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph:
> (1) Would offend or embarrass an ordinary person if such person appeared in the photograph; and
> (2) Was taken for the purpose of sexual arousal or gratification of the defendant.
> (b) As used in this section, unless the context otherwise requires, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission of any individual.
> (c) All photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed.

Tenn. Code Ann. § 39-13-605 (2014).

"Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009) (citing Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional," Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (citations omitted), and "indulge every presumption and resolve every doubt in favor of the statute's constitutionality," State v. Taylor, 70 S.W.3d 717, 721 (Tenn. 2002).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A "vague statute is vulnerable to a constitutional challenge because it (1) fails to provide fair notice that certain activities are unlawful; and (2) fails to establish reasonably clear guidelines for law enforcement officials and courts, which, in turn, invites arbitrary and discriminatory enforcement." State v. Pickett, 211 S.W.3d 696, 702 (Tenn. 2007). "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally

-10-

responsible for conduct which [they] could not reasonably understand to be proscribed.'" State v. Crank, 468 S.W.3d 15, 22-23 (Tenn. 2015) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)).

"Despite the importance of these constitutional protections," our supreme court "has recognized the 'inherent vagueness' of statutory language . . . and has held that criminal statutes do not have to meet the unattainable standard of 'absolute precision.'" Crank, 468 S.W.3d at 23 (quoting Pickett, 211 S.W.3d at 704; State v. McDonald, 534 S.W.2d 650, 651 (Tenn. 1976)). "The vagueness doctrine does not invalidate every statute [that] a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words." State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990). When "evaluating a statute for vagueness," this court "may consider the plain meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language." Crank, 468 S.W.3d at 23 (citing Lyons, 802 S.W.2d at 592); see Tenn. Code Ann. § 39-11-104 (stating that each statute must be "construed according to the fair import of its terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code").

The Defendant correctly points out that the phrase "when the person has a reasonable expectation of privacy" is not defined in the statute under which the Defendant was convicted. It is, however, a phrase commonly used in the law. The discussion of the existence of a reasonable expectation of privacy most often occurs in cases discussing the Fourth Amendment to the United States Constitution, but its use is not limited to that arena, and we can fathom no reason to ascribe to the phrase as used in Code section 39-13-605 a meaning different from that it enjoys in every other legal context. It is well established that a person has a reasonable expectation of privacy when the person has "an actual, subjective expectation of privacy and . . . society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (citations omitted).

Utilizing the common understanding of the terms contained in Code section 39-13-605, we conclude that the statute does not "prohibit[] conduct 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" Crank, 468 S.W.3d at 22 (quoting Pickett, 211 S.W.3d at 704). Consequently, the trial court did not err by denying the Defendant's constitutional challenge to the unlawful photography statute.

*II. Defendant's Statement*

-11-

The Defendant contends that the trial court erred by admitting his statement into evidence, arguing that its admission violated Tennessee Rule of Evidence 404(b)'s prohibition on propensity evidence. The State contends that the statement was admissible to prove intent—that the Defendant knowingly filmed the victim—and motive—that the Defendant filmed the women for his own purposes; both of which are permissible purposes under Rule 404(b).

We begin by noting that the Defendant's statement does not contain any admission to wrongdoing specific to this case. It is only a general admission that he had been using his cellular telephone to video women in the Kingsport area. The admission of this evidence of other bad acts by the Defendant is governed by Tennessee Rule of Evidence 404(b). Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). To admit such evidence, the rule specifies four prerequisites:

> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Id. When, as here, the trial court substantially complies with the procedural requirements of Rule 404(b), this court will overturn the trial court's ruling only when there has been an abuse of discretion. See State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005).

The rationale underlying the general rule is that admission of such evidence carries with it the inherent risk of the jury's convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than upon the strength of the evidence. Thacker, 164 S.W.3d at 239. Nothing in the rule prohibits its application to statements made by the defendant, and although evidence of other bad acts "usually does not come in the form of statements or confessions made by the defendant, there exists no valid reason to make an exception to the requirements [of Rule 404(b)] for prior bad act evidence disclosed in a defendant's confession." Id. Despite Rule 404(b)'s general proscription on propensity evidence, "Tennessee recognizes three instances in which evidence of uncharged crimes may be admissible: (1) to prove identity (including motive

-12-

and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense." State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996) (citations omitted).

Initially, we observe that the statement reflected that Detective Taylor asked the Defendant about the incident that precipitated the charge in this case, and the Defendant made a specific disavowal of guilt.[4] Specifically, the Defendant said, "As far as grabbing the woman[']s rear at [the] Dollar Store, I don't recall being there or doing it." Furthermore, in arguments before the jury, defense counsel focused on the fact that no video recording was ever discovered by the prosecution and submitted that no video existed because these events did not happen as the victim said. Defense counsel surmised,

> [The victim] told you about a video that the [S]tate has told you doesn't exist. If she's mistaken about that maybe she's been mistaken about the encounter she had with a guy who she admits to you is creepy. . . . If she could be mistaken about the video[,] she could be mistaken about what happened.

(Emphasis added). Defense counsel also attempted to discredit the victim's mother's testimony by claiming that she was merely protecting her daughter: "[The victim's mother] went after somebody. That doesn't mean [the Defendant] did any of this stuff. That just means her daughter told her something happened and she reacted as any good mother would." (Emphasis added).

In this case, we must agree with the State that the Defendant's identity was placed at issue. There was no surveillance video obtainable from the Dollar Tree; the identification of the Defendant rested solely on the victim's and her mother's testimony; the reliability of which was challenged by the defense. In his statement to Detective Taylor, the Defendant admitted that he had been frequently videoing blonde-haired women in Kingsport shopping centers but claimed he had no recollection of being at the Dollar Tree or of the victim in this case. Because identity of the perpetrator was a material issue in this case, evidence of motive and a common scheme or plan were relevant. See McCary, 922 S.W.2d at 514 (citation omitted).

Finally, the statement provided evidence that the Defendant filmed the victim for the purpose of sexual arousal or gratification. We know that in this case, the video was

---

[4] This specific sentence in the police statement is not bad act evidence but is in fact the opposite. However, it was the State seeking admission of this evidence, not the Defendant. The State would be unable to bootstrap the entire statement by seeking admission of this single sentence. However, other reasons support its admission.

-13-

an extreme close-up of the victim's bottom; the nature of the area itself added credence to the element of sexual arousal or gratification. The Defendant admitted that he took the other videos "for [his] own purposes" and that his actions "cross[ed] moral boundaries." Moreover, the Defendant recognized that he had a problem for which he was willing to get help. The Defendant's general-denial defense placed intent and state of mind at issue. See United States v. Smith, 789 F.3d 923, 930 (8th Cir. 2015); see also United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002) (both cases concluding that a defendant's general-denial defense at trial placed his intent and state of mind at issue).

We conclude that such proof supplied circumstantial evidence that the Defendant took these videos for the purpose of sexual arousal or gratification, despite his claimed motivation that he was only compelled to do so by an obsession with the technical function of this phone. Additionally, as the trier of fact, the jury was free to disregard the Defendant's claimed motivation in the statement that he was only compelled to do so by an obsession with the technical function of this phone and find that portion of the statement not credible. See State v. Jeremy Wendell Thorpe, No. M2012-02676-CCA-R3-CD, 2013 WL 5436701, at *6 (Tenn. Crim. App. Sept. 27, 2013) ("The jury, as the sole arbiter of the facts and the credibility of the witnesses, was free to accredit any portion of any witness's testimony as it saw fit.") (citing State v. Allen, 69 S.W.3d 181, 189 (Tenn. 2002); Tenn. Const. art. I, § 19)).

The trial court reviewed the statement line-by-line and determined which portions were relevant and not unfairly prejudicial. The court ruled that the danger of unfair prejudice was outweighed by the probative value of the redacted statement. The trial court in this case substantially complied with the procedural requirements of Rule 404(b). For all of the reasons outlined above, we cannot say that it was an abuse of discretion to admit the Defendant's statement as redacted.

## III. Sufficiency

The Defendant contends that the evidence adduced at trial was insufficient to support his conviction. The State asserts that the evidence was sufficient.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness

-14-

credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict."  Id.; see State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  The standard of proof is the same whether the evidence is direct or circumstantial.  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).  Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence."  Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).  The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State."  State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

### A. Unlawful Photography

The unlawful photography statute in effect at the time the Defendant committed this alleged act was set forth in detail above.  As charged in this case, the elements of the offense required the State to show: (1) that the Defendant knowingly photographed the victim; (2) that the victim had a reasonable expectation of privacy at the time of being photographed and did not provide prior effective consent to being photographed; (3) that the photograph would offend or embarrass an ordinary person if such person appeared in the photograph; and (4) that the photograph was taken for the purpose of sexual arousal or gratification of the Defendant.  See Tenn. Code Ann. § 39-13-605(a) (2014).  "Photograph" as used in this section "means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission of any individual."  Tenn. Code Ann. § 39-13-605(b).

1. Photograph.  Examined in the light most favorable to the State, the evidence established that the Defendant approached the victim inside the Dollar Tree and stood "really close" to her.  When she stepped forward, he did as well.  She then turned around to look and saw the Defendant, whom she did not know, with a "really creepy grin" on his face.  According to the victim, the Defendant had his cellular telephone's camera enabled, and it was positioned "less than a foot away from" the right side of her bottom.  The victim testified that she was able to see her pants on the screen of the Defendant's phone and realized the Defendant was filming her.  In our view, this evidence was sufficient to establish the photograph requirement of the statute.

2. Reasonable Expectation of Privacy.  Code section 39-13-605 makes it illegal to photograph an individual without the individual's consent "when the individual has a

reasonable expectation of privacy."[5]   As discussed above, a person has a reasonable expectation of privacy when the person has "an actual, subjective expectation of privacy and . . . society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." Munn, 56 S.W.3d at 494 (citations omitted).  As the Supreme Court has explained, "[w]hat a person knowingly exposes to the public, even in his own home or office," is not covered by a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 351-52 (1967) (citations omitted).  "But what he seeks to preserve as private, even in an area accessible to the public," may be covered by a reasonable expectation of privacy. Id.  Thus, the crucial question was not whether the victim was in public when the Defendant allegedly photographed her but whether, under the circumstances, she "had an actual, subjective expectation of privacy and . . . whether society is willing to view [that] subjective expectation of privacy as reasonable and justifiable under the circumstances." Munn, 56 S.W.3d at 494 (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

The victim testified that the Defendant was filming her bottom within twelve inches of her person.  She indicated that she did not consent to the Defendant's actions, that his taking a video of her in this manner was embarrassing, and that she expected not to be filmed in that way while shopping at the Dollar Tree.  She asserted her belief that she had "a reasonable expectation" that this would "not happen to [her] in a public place."  Nonetheless, the victim was fully-clothed in full view of any person present in the store.  She did not testify that she expected her person and the outside of her clothing to remain completely private.  No evidence suggested that the Defendant attempted to photograph the victim underneath her clothing.  Indeed, a similar image could have been captured by surveillance equipment, although the Dollar Tree had none.  Consequently, we conclude that the victim did not have a subjective expectation of privacy.

Moreover, even if the victim's testimony had supported a conclusion that she had a subjective expectation of privacy, that subjective expectation of privacy is not, in our view, one that society would view as reasonable.  Exposure to the capture of our images by cameras has become, perhaps unfortunately, a reality of daily life in our digital age.  When nearly every person goes about her day with a handheld device capable of taking

---

[5] We note that Code section 39-13-605 has been amended since the Defendant committed these acts. Specifically, subsection (b)(2), which went into effect July 1, 2018, provides as follows:

As used in this section, an individual has a reasonable expectation of privacy, regardless of the location where a photograph is taken, if:
(A) The photograph is taken in a manner that would offend or embarrass a reasonable person; and
(B) The photograph depicts areas of the individual's body, clothed or unclothed, that would not be visible to ordinary observation but for the offensive or embarrassing manner of photography.

hundreds of photographs and videos and every public place is equipped with a wide variety of surveillance equipment, it is simply not reasonable to expect that our fully-clothed images will remain totally private. In analogous circumstances, the Supreme Court has determined that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." United States v. Knotts, 460 U.S. 276, 281-82 (1983). The Court has also concluded that no reasonable expectation of privacy existed "in areas of the store where the public was invited to enter and to transact business." Maryland v. Macon, 472 U.S. 463, 469 (1985). Accordingly, we conclude that the victim did not have a reasonable expectation of privacy under these circumstances pursuant to Code section 39-13-605 in effect at the time of the Defendant's conduct.

3. Character of Photograph. It is an element of the conviction offense that the photograph in question "[w]ould offend or embarrass an ordinary person if such person appeared in the photograph." The victim said that the Defendant was a stranger to her, that she saw her pants on the Defendant's phone placed less than a foot away from her bottom, and that she observed a "really creepy grin" on the Defendant's face while he was filming her. She also described the Defendant's position as "extremely close" and "invading [her] personal space." The victim's testimony indicated that the recording was an extremely close-up view of her rear end. In our view, despite the fact that no recording was ever found, a rational trier of fact could have concluded under the circumstances presented in this case that the recording of the victim "[w]ould offend or embarrass an ordinary person if such person appeared in the photograph." While such a close-up image could be obtained from surveillance footage or other similar recordings, the result would still likewise embarrass and offend an ordinary person.

4. Sexual Arousal or Gratification. Finally, the State had to establish that the photograph "[w]as taken for the purpose of sexual arousal or gratification of the [D]efendant." In the light most favorable to the State, the circumstances support this element—the Defendant's facial expression; his extremely close-up filming of the victim's private areas; his placing duct tape on his phone to avoid detection; and his acknowledgement of a problem that "cross[ed] moral boundaries" for which he was amenable to professional help. Importantly, when the Defendant was challenged by the victim, the Defendant grabbed her bottom and said, "Nice a-s," before quickly exiting the store. Nonetheless, because the victim did not have a reasonable expectation of privacy, we hold that the evidence is insufficient to support the Defendant's conviction for unlawful photography. The conviction is reversed, and the charge is dismissed.

*B. Attempted Sexual Battery*

As relevant here, "[s]exual battery is unlawful sexual contact with a victim by the defendant [when] . . . [t]he sexual contact is accomplished without the consent of the

-17-

victim and the defendant knows or has reason to know . . . that the victim did not consent[.]"  Tenn. Code Ann. § 39-13-505(a)(2).  The jury here was instructed on the statutory definitions for sexual contact and intimate parts.  "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]"  Tenn. Code Ann. § 39-13-501(6).  "Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being[.]"  Tenn. Code Ann. § 39-13-501(2).

In this case, the Defendant was convicted of the lesser-included offense of attempt.  The attempt statute defines criminal attempt as follows:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).  Furthermore, conduct does not constitute a substantial step under subdivision (a)(3), "unless the person's entire course of action is corroborative of the intent to commit the offense."  Tenn. Code Ann. § 39-12-101(b).

Here, the victim testified that after her prior interaction with the Defendant, she tried to get away from him, but he followed her.  The Defendant then grabbed her bottom and said, "Nice a-s."  The victim hit him with an air freshner can, and the Defendant abruptly left the store.  A victim's testimony alone is sufficient to support a defendant's conviction and requires no corroboration.  See State v. Elkins, 102 S.W.3d, 582-83 (Tenn. 2003) (concluding that the evidence was sufficient to support a conviction for rape of a child, despite the fact that the victim's testimony contained some inconsistencies).  Moreover, the victim's mother testified that when she went to her daughter after her daughter "hollered" out, her daughter informed her that the Defendant had "just grabbed" her, providing some level of corroboration.  Furthermore, completion of the attempted

offense is not a defense to prosecution for criminal attempt. Tenn. Code Ann. § 39-12-101(c). "[P]roof, even uncontroverted proof, that a defendant completed a crime, in and of itself, does not shield a defendant from a conviction for criminal attempt of the crime allegedly committed." State v. Thorpe, 463 S.W.3d 851, 863 (Tenn. 2015). Accordingly, the evidence was sufficient to support the Defendant's conviction for attempted sexual battery.

*IV. Sentencing*

The Defendant argues that the trial court erred by imposing consecutive sentencing. Although the Defendant's convicitons for unlawful photography in all three cases have been reversed and dismissed on appeal, we will address his challenges to the sentence imposed to facilitate further appellate review. Specifically, the Defendant contends that the trial court failed to make any findings to support the imposition of consecutive sentences and that service of three consecutive eleven-month-and-twenty-nine-day sentences in confinement "is not reasonably related to the severity of the offenses involved." The State responds that "the trial court had an adequate basis for imposing consecutive sentencing."

Misdemeanor sentencing, in contrast to felony sentencing, is covered by Code section 40-35-302, the terms of which afford the trial court considerable flexibility in setting the length and manner of service of the misdemeanor sentence. See Tenn. Code Ann. § 40-35-302. For example, a separate sentencing hearing is not mandatory in misdemeanor cases, and the enhancement and mitigating factors need only be considered when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302; State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). Although our supreme court has not yet applied the standard of review adopted in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012)—abuse of discretion coupled with a presumption of reasonableness—to misdemeanor sentencing decisions, it has stated, "The abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for all sentencing decisions." State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013); see also State v. King, 432 S.W.3d 316, 324-25 (Tenn. 2014) (holding that, because "Bise and its progeny establish that the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions," the Bise standard is the appropriate standard of appellate review for a trial court's sentencing decision to either grant or deny judicial diversion"). Consequently, we join the growing number of panels of this court that have held that the Bise standard similarly applies to appellate review of misdemeanor sentencing. See, e.g., State v. Willard Hampton, No. W2018-

00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019) (collecting cases).

However, a court may not impose consecutive sentences for misdemeanors under Code section 40-35-302 without considering whether the requirements of Code section 40-35-115 are met. See Tenn. Code Ann. § 40-35-115, Compiler's Notes. Tennessee Code Annotated section 40-35-115(b) contains the criteria for imposing consecutive sentencing "when a defendant is convicted of more than one criminal offense." Because the criteria for determining consecutive sentencing "are stated in the alternative[,] . . . only one need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003). When reviewing a trial court's imposition of consecutive sentences, "the presumption of reasonableness applies," which gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." Pollard, 432 S.W.3d at 861.

The Defendant argues that the trial court failed to make the appropriate findings in support of consecutive sentencing. In rendering its sentencing decision, the trial court considered the presentence report and the statutory mitigating and enhancement factors. As for applicable enhancement factors, the trial court correctly[6] determined that the Defendant had a previous history of criminal convictions and that the Defendant had failed to comply with prior conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8). In mitigation, the trial court found that the Defendant's conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). The trial court noted that it was placing "great weight on the enhancing factors" and "not . . . much weight at all on the mitigating factor." The trial court ordered the Defendant to serve eleven months and twenty-nine days on both counts with release eligibility after service of seventy-five percent.

The trial court then addressed "alternative sentencing," "focus[ing] a lot" on the Defendant's prior record. The trial court initially commented on the copious number of times that the Defendant had received sentences involving release into the community. The trial court observed that the Defendant had received probation "time after time after time." The trial court further noted that the Defendant had numerous prior misdemeanor convictions, including "obscene display [and] masturbation in public," which were "similar in nature" to the present convictions, as well as additional prior convictions for

---

[6] The trial court also concluded that enhancing factor (3)—the offense involved more than one victim—applied because "there were two different victims." See Tenn. Code Ann. § 40-35-114(3). However, the Defendant was charged separately with offenses for both named victims. Therefore, this factor was inappropriate under these circumstances.

-20-

"possession of drugs, breaking and entering . . . , [and] multiple assaults." Next, the trial court remarked that the victim had stated this incident had "affected her emotionally" and also that the Defendant reported good physical and mental health, with no "prolonged drug or alcohol" issues. The trial court stated that it had considered the psychosexual report but declined to give it much weight. Ultimately, the trial court ruled,

> But when I weigh the positive factors and the negative factors as I'm required to do, the negative factors far and away outweigh any positive factors in this report. . . . I'm going to deny alternative sentencing for that reason. He's going to serve the sentence and the three misdemeanor sentences are going to be consecutive to one another.

The trial court's ruling indeed reflects that it failed to specify which of the criteria from Code section 40-35-115 it was relying upon to impose consecutive sentencing. However, the trial court's findings substantiate the application of criterion (2)—that the Defendant is an offender whose record of criminal activity is extensive. See Tenn. Code Ann. § 40-35-115(b)(2). The trial court emphasized the Defendant's prior misdemeanor convictions, particularly those "dealing with obscene display, masturbation in public, those kinds of things, possession of drugs, breaking and entering . . . , [and] multiple assaults." "Trial courts can consider prior misdemeanors in determining whether a defendant has an extensive record of criminal activity" for consecutive sentencing purposes. State v. Dickson, 413 S.W.3d 735, 748 (Tenn. 2013). The trial court also noted that the Defendant had often violated the terms of previously-imposed probationary sentences. See id. (stating that although many of the defendant's "convictions did not involve acts of violence and most constituted driving offenses, they indicate a consistent pattern of operating outside the confines of lawful behavior"). The evidence supports the trial court's conclusions, and consecutive sentencing was appropriately ordered in this case under either an abuse of discretion or de novo standard of review. We discern no error in the trial court's sentencing decision.

## CONCLUSION

Because the evidence was insufficient to support the Defendant's conviction for unlawful photography, that conviction is reversed, and the charge is dismissed. However, the evidence was sufficient to support the Defendant's conviction for attempted sexual battery, and that conviction is affirmed. The judgments of the trial court are, therefore, affirmed in part and reversed in part.

_____

-21-

D. KELLY THOMAS, JR., JUDGE