# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
## November 7, 2002 Session
### Heard at Cleveland[1]

## STATE OF TENNESSEE v. KEITH GOODMAN

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. AOCR0098    James B. Scott, Jr., Judge**

---

**No. E2001-00036-SC-R11-CD - Filed November 22, 2002**

---

The threshold issue presented in this appeal is whether the Court of Criminal Appeals erred in holding that the defendant's motion to dismiss was not capable of pretrial determination under Tennessee Rule of Criminal Procedure 12(b) because it requires a determination of the general issue of the defendant's guilt or innocence. In our view, the defendant's motion presents a legal question – the proper interpretation of a statute – and does not require a determination of the defendant's guilt or innocence. Having decided the threshold issue, we also are of the opinion that the trial court correctly interpreted the statute when it held that a parent is not subject to prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2) when the indictment fails to allege that the minor child was removed or confined by force, threat, or fraud. Therefore, the judgment of the Court of Criminal Appeals is reversed. The judgment of the trial court granting the defendant's pretrial motion to dismiss count one of the indictment is reinstated.

### Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

J. Thomas Marshall, Jr., Office of the Public Defender, Clinton, Tennessee, for the appellant, Keith Goodman

---

[1]This case was heard as part of the November 7, 2002, S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project in Cleveland, Bradley County, Tennessee.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The Anderson County Grand Jury returned a multi-count indictment charging the defendant, Keith Goodman, in count one with especially aggravated kidnapping of his daughter, Athene Baughman, in violation of Tennessee Code Annotated section 39-13-305(a)(2).[2] The charged offense is defined, in pertinent part, as follows:

> (a)Especially aggravated kidnapping is false imprisonment, as defined in § 39-13-302:
>
> . . .
>
> (2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement . . . .

Under Tennessee Code Annotated section 39-13-302(a) "[a] person commits the offense of false imprisonment who knowingly removes or confines another <u>unlawfully</u> so as to interfere with the other's liberty." (Emphasis added.)  As used in that statute, the term unlawfully "means, with respect to removal or confinement, one which is . . ., in the case of a person who is under the age of thirteen (13) or incompetent, <u>accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's or incompetent's welfare.</u>" (Emphasis added.)

The defendant filed a pre-trial motion to dismiss count one of the indictment pursuant to Tennessee Rule of Criminal Procedure 12(b) which provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."  The defendant argued that under the statutory definition of "unlawful," set out above, natural parents are not subject to prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2), when there is no allegation that the minor child was removed or confined by force, threat, or fraud.  According to the defendant, removal or confinement will never be "unlawful" when the perpetrator is a parent because it will never be "accomplished without the consent of a parent."  The defendant therefore asserted that

---

[2]The defendant was also charged with resisting arrest, reckless endangerment, and assault.  A jury found the defendant guilty of these misdemeanor offenses, and the trial court imposed a sentence of supervised probation for the balance of eleven months and twenty-nine days.  These convictions and the sentence imposed are not at issue in this appeal.

count one of the indictment should be dismissed because, as the victim's natural father, he is not subject to prosecution for especially aggravated kidnapping.

The State filed a written response to the defendant's motion. The State did not assert that the motion was not proper for pretrial resolution under Tennessee Rule of Criminal Procedure 12(b). Instead, the State disagreed with the defendant's reading of the statute defining the term "unlawful." According to the State, removal or confinement is unlawful when it is accomplished without the consent of a parent "responsible for the general supervision of the minor's . . . welfare." The State argued that, in this case, the victim's mother, not the defendant, was the parent responsible for the general supervision of the minor victim's welfare. The State therefore urged the trial court to deny the defendant's motion.

The trial court held a hearing on the motion. At the hearing, the prosecution and the defense entered the following stipulation of facts:

1. Amber Baughman and Keith Goodman have never been married to each other.

2. Amber Baughman gave birth to a child, Athene, in 1999. Keith Goodman and Amber Baughman acknowledged that Athene is the only natural child of Keith Goodman and Amber Baughman; and Keith Goodman is listed on Athene's birth certificate as the father.

3. No orders or judgments of any kind have been entered in any court regarding paternity, custody, visitation or support involving the child Athene.

At the hearing, the State again did not assert that the legal issue – interpretation of the statute – was inappropriate for pretrial resolution under Tennessee Rule of Criminal Procedure 12(b). In fact, the assistant district attorney general stated: "We're in agreement up to the issue, the issue is that definition of 'unlawful.'" The State merely asserted that if the trial court agreed with its interpretation of the statute, then the case was not subject to dismissal. After reviewing the statutory language at issue, the trial court agreed with the defendant's interpretation of the statute. Concluding that the parents are not subject to prosecution under the relevant statutes, the trial court granted the defendant's motion to dismiss based upon the stipulation that the defendant is Athene's natural father.

The State appealed, challenging only the trial court's interpretation of the statute defining unlawful. The Court of Criminal Appeals reversed the trial court's judgment on a different basis, however. Finding that the issue raised by the defendant's motion was not capable of resolution without a determination of the general issue of the defendant's guilt or innocence, the Court of Criminal Appeals held that dismissal under Tennessee Rule of Criminal Procedure 12(b) was not proper. The defendant filed an application for permission to appeal arguing that the issue raised is a question of law which the trial court properly considered under Rule 12(b) and properly resolved under the statutory definition of unlawful. We granted the defendant's application for permission to appeal. For the following reasons, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated.

**Tennessee Rule of Criminal Procedure 12**

Resolution of the threshold issue necessarily begins with the pertinent language of Tennessee Rule of Criminal Procedure Rule 12, which provides as follows:

> (b) Pretrial Motions. – Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge.
>
> . . . .
>
> (e) Ruling on Motion. – A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
>
> . . .
>
> (g) Records. – A verbatim record shall be made of all proceedings at the hearing, including such findings of fact and conclusions of law as are made orally.

Generally then, under the plain language of Rule 12(b) and (e), once a pretrial motion is made, a trial court must decide the motion before trial if it is "capable of determination without the trial of the general issue." Tenn. R. Crim. P. 12(b) ; see also State v. Vickers, 970 S.W.2d 444, 447 (Tenn. 1998). This rule avoids the unnecessary interruption and inefficiency caused by removing the jury from the courtroom to conduct hearings on motions filed during the course of trial, and the rule ensures the right of the State to appeal an adverse ruling of the trial court without implicating double jeopardy considerations. State v. Randolph, 692 S.W.2d 37, 40 (Tenn. Crim. App.) perm. app. denied (Tenn. 1985). Motions ordinarily are capable of determination before trial if they raise questions of law rather than questions of fact. See United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976) (discussing the identical Federal Rule of Criminal Procedure 12). However, subsections (e) and (g) of Rule 12 clearly envision that a trial court may make findings of fact necessary to decide the questions of law presented by a pretrial motion so long as the factual findings are not intertwined with the general issue of guilt or innocence. See Vickers, 970 S.W.2d at 447; Jones, 542 F.2d at 664. Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence. See Vickers, 970 S.W.2d at 447; State v. Burrow, 769 S.W.2d 510, 512 (Tenn. Crim. App. 1989).

Applying these guiding principles, we hold that the defendant's pretrial motion presented a question of law which was "capable of determination without the trial of the general issue." Resolution of the defendant's motion required the trial court to interpret a statute and apply the statute to undisputed facts. These are questions of law which do not involve factual findings about the general issue of guilt or innocence. See State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001) ("Issues of statutory construction are questions of law that this Court reviews de novo without a presumption of correctness."); State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000)

(Where the issue involves an application of law to undisputed facts, a question of law is presented which will be subject to de novo review.). The stipulated facts did not describe and were not intertwined with the factual evidence of the defendant's conduct at the time of the alleged offense. They were relevant only to the legal question presented by the defendant's motion, not to the general issue of guilt or innocence. The State did not object to the trial court's use of the procedure, and as indicated, explicitly agreed that the motion presented a question of law capable of determination under Tennessee Rule of Criminal Procedure 12.

Also supporting our conclusion that the procedure was appropriate under Rule 12 is State v. Randolph, 676 S.W2.d 943 (Tenn. 1984). In Randolph, the defendant moved to dismiss the indictment charging him with second degree murder, arguing that, as a matter of law, a seller of heroin could not be convicted of homicide where the customer died from a self-administered overdose. After holding an evidentiary hearing and considering evidence that was introduced by agreement, the trial court granted the defendant's motion. On appeal, this Court disagreed with the trial court's resolution of the substantive issue and held that a seller of heroin is subject to prosecution for homicide. Nonetheless, this Court did not denounce the procedure by which the issue was raised and resolved. Significantly, the trial court in this case employed a procedure almost identical to that used and implicitly approved by this Court in Randolph. Accordingly, the judgment of the Court of Criminal Appeals which found that the defendant's motion was not capable of pretrial determination under Rule 12 is reversed. Having so decided, we will next determine whether the trial court properly resolved the substantive legal issue presented by the motion.[3]

### Especially Aggravated Kidnapping By Parent

The indictment in this case charged that the defendant "did . . . unlawfully and knowingly remove and confine ATHENE BAUGHMAN, a person under thirteen (13) years of age, so as to interfere substantially with ATHENE BAUGHMAN's liberty, in violation of TCA 39-13-305." Therefore, the indictment charged especially aggravated kidnapping in accordance with Tennessee Code Annotated section 39-13-305(a)(2) — "false imprisonment, as defined in § 39-13-302 . . . [w]here the victim was under the age of thirteen (13) at the time of the removal or confinement." False imprisonment is committed when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a). Finally, the word "[u]nlawful means, with respect to removal or confinement, one which is accomplished by force, threat or fraud, or in the case of a person who is under the age of thirteen (13) or incompetent, accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's or incompetent's welfare." Tenn.

---

[3]Because it reversed on procedural grounds, the Court of Criminal Appeals did not address the substantive issue presented by the motion. Rather than remand to the intermediate court, in the interest of judicial economy we exercise our discretion to address this legal issue. See Tenn. R. App. P. 13(b) ("[t]he appellate court ... may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process."); See also State v. Farner, 66 S.W.3d 188, 206 (Tenn. 2001); State v. Mixon, 983 S.W.2d 661, 673 (Tenn.1999).

Code Ann. § 39-13-301(2) (emphasis added).  The dispute in this case revolves around the emphasized portion of the statutory definition of the word unlawful.

The defendant maintains that under the plain language of this statutory definition a parent can never be prosecuted for removing or confining his or her minor child unless the removal or confinement is accomplished by force, threat, or fraud.  Since the indictment in this case did not charge force, threat, or fraud, the defendant contends that the trial court properly dismissed the indictment.  The defendant says that because the statute specifies "a parent" and did not use the term "custodial parent," his status as "a parent" is sufficient to preclude this prosecution.  Had the General Assembly intended to require the consent of the "custodial" parent, the defendant avers that term would have been included in the statute.  While the defendant contends that the meaning of the statute is clear on its face, he finds further support for his position in the fact that the General Assembly classified custodial interference as a Class E felony, punishable by one to six years imprisonment and a maximum fine of $3,000, whereas especially aggravated kidnapping is a Class A felony, punishable by fifteen to sixty years imprisonment and a maximum fine of $50,000.  The defendant claims that it is illogical to assume the Legislature would intend to punish a parent who commits custodial interference by "kidnapping" a child in violation of a court order so much <u>less</u> severely than a parent who commits the same act when no court order is in place.  Therefore, the defendant maintains that both the plain language of the statute and a logical reading of this statute with related statutory provisions support the trial court's holding that parents are not subject to prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2) when there is no allegation that the minor child was removed or confined by force, threat, or fraud.

Although the State's briefs filed in this Court did not address this issue, the State argued in the Court of Criminal Appeals that the plain language of the statute does not support the trial court's decision.  According to the State, the phrase "responsible for the general supervision of the minor's . . .welfare" in the definition of unlawful, modifies the words "parent, guardian, or other person."  Under the circumstances of this case, the State argues that Athene's mother was the parent responsible for the general supervision of her welfare.   In support of this argument, the State points out that the defendant was not married to Athene's mother and that there was no court order relating to legitimation or custody.  Under these circumstances, the State contends that Tennessee Code Annotated section 36-2-304 controls.  This statute declares: "[a]bsent an order of custody to the contrary, custody of a child born out of wedlock is with the mother."  The State maintains that notwithstanding the defendant's status as Athene's natural father, he was not the parent "responsible for the general supervision of the minor's welfare" because he did not have custody under section 36-2-304.  Therefore, the State claims that the defendant is subject to prosecution for especially aggravated kidnapping because he removed or confined Athene without the consent of her mother, who the State claims is the parent "responsible for the general supervision of the minor's welfare" because she had custody pursuant to Section 36-2-304.

As previously indicated, the construction of a statute is a question of law which appellate courts review de novo, with no presumption of correctness.  <u>Walls</u>, 62 S.W.3d at 121.  In construing statutes, our duty is to effectuate legislative intent.  <u>State v. Alford</u>, 970 S.W.2d 944, 946 (Tenn. 1998); <u>Carter v. State</u>, 952 S.W.2d 417, 419 (Tenn. 1997); <u>Wilson v. Johnson</u>

County, 879 S.W.2d 807, 809 (Tenn. 1994).  Legislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language.  Alford, 970 S.W.2d at 946; Carter, 952 S.W.2d at 419. Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity exists which requires further inquiry to ascertain legislative intent.  Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998).  The language employed must be considered in the context of the entire statute, and the component parts of a statute should be construed, if possible, consistently and reasonably.  Alford, 970 S.W.2d at 946; Wilson, 879 S.W.2d at 809.  Furthermore, we are to assume that the legislature used each word in the statute purposely, and that the use of these words is intended to convey a meaning and serve a purpose.  Browder, 975 S.W.2d at 311.   Where the language of the statute is clear and plain and fully expresses the legislature's intent, resort to auxiliary rules of construction is unnecessary, and we need only enforce the statute.  Id.

The statute at issue in this case is clearly and plainly written.  Removal or confinement is not "unlawful" if it is accomplished with the consent of "a parent."  The statute does not use the term "custodial parent."  The consent of "a parent" is sufficient.  The State's argument that the phrase "responsible for the general supervision of the minor's or incompetent's welfare" modifies the words "a parent, guardian or other person" is unpersuasive.  Considering the language in context and assuming that the General Assembly used each word in the statute purposely with the intent of conveying a meaning and serving a purpose, we are of the opinion that the phrase upon which the State relies modifies only the words "other person."  This phrase serves to describe persons, in addition to parents and guardians, who may consent to the removal or confinement of a minor or incompetent.  Applying the phrase in the manner suggested by the State would render the terms "parent" and "guardian" superfluous and unnecessary.

As the defendant points out, the State's interpretation of the statute also would subject a parent to a Class A felony prosecution under Tennessee Code Annotated section 39-13-305(a)(2) for conduct that is ordinarily prosecuted as custodial interference, a Class E felony or a Class A misdemeanor, if the child is returned voluntarily by the defendant.  See Tenn. Code Ann. § 39-13-306(d).  As the defendant points out, the conduct at issue is the same –  removing or detaining a minor child.  The difference is that custodial interference requires that the removal or detention be in violation of a court order regarding the child's custody.  Even though our decision is based primarily upon the plain language of the statute, we agree with the defendant that it is against logic to conclude that the General Assembly intended to impose a less severe punishment when this type of conduct violates a court order than the punishment imposed when no court order is violated.[4]  Therefore, we conclude that the defendant is not subject to

---

[4]The defendant was prosecuted for especially aggravated kidnapping rather than custodial interference because his removal or confinement of Athene did not violate an existing court order regarding her custody, an essential element of the offense of custodial interference.  Because the defendant was not subject to prosecution for custodial interference, the prosecutor urged the trial court to interpret the definition of unlawful so as to allow his prosecution for especially aggravated kidnapping.  Interestingly enough, had a court order been in place, the defendant clearly would not have been subject to prosecution for especially aggravated kidnapping but would have been subject to prosecution for custodial interference alone.  See Tenn. Code Ann. §39-13-306(c) (stating that where the only aggravating factor is the age of the victim, the offense shall be prosecuted as custodial interference).

prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2). The indictment in this case fails to allege that the defendant removed or confined the minor child by force, threat, or fraud, and the removal or confinement was not accomplished "without the consent of a parent" because the defendant is the minor child's father.

We note that our holding in this regard is consistent with prior Tennessee law. For example, in Hicks v. State, 12 S.W.2d 385 (Tenn. 1928), this Court held that a father was not subject to prosecution for kidnapping when he took his children from his ex-wife without knowledge that she had obtained a divorce while he was in prison and had been awarded custody of the children in the divorce proceeding. In so holding, this Court stated that the father's "claim to their custody, in the absence of a decree excluding it could be asserted without resort to legal process, and such assertion would not render him guilty of a crime." Hicks, 12 S.W.2d at 386.[5] Our holding on this issue also is consistent with the majority view from other jurisdictions. See Armendariz v. People, 711 P.2d 1268 (Colo. 1986); Johnson v. State, 637 So.2d 3 (Fla. Ct. App. 1994); People v. Algarin, 558 N.E.2d 457 (Ill. App. Ct. 1990); see generally William B. Johnson, Annotation, Kidnapping or Related Offense by Taking or Removing of Child by or under Authority of Parent or One in Loco Parentis, 20 A.L.R. 4th 823, 827 (1983).

Therefore, while we certainly do not condone the defendant's conduct, the trial court correctly held that, as the minor child's father, the defendant is not subject to prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2) in the absence of an allegation that the minor child was removed or confined by force, threat, or fraud. Nor is the defendant subject to custodial interference since he violated no court order when he removed or confined the minor child. This Court does not substitute its own policy judgments for those of the legislature. Gleaves v. Checker Cab Transit Corp., Inc., 15 S.W.3d 799, 803 (Tenn. 2000). Instead, this Court must presume that the legislature says in a statute what it means and means in a statute what it says. Id. It is not for the courts to alter or amend a statute. Id. The General Assembly , not this Court, is empowered to amend the criminal statutes at issue in this case.

**Conclusion**

For the reasons explained herein, we conclude that the trial court properly considered the defendant's pretrial motion under Tennessee Rule of Criminal Procedure 12 and properly granted the motion to dismiss. As the minor child's father, the defendant is not subject to prosecution for especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(2) because the indictment does not allege that the minor child was removed or confined by force, threat, or fraud. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated. Costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

---

[5]The statute at issue in Hicks is similar to the statute at issue in this case and provided as follows: "Every person who unlawfully takes or decoys away any child under the age of twelve years, with intent to detain or conceal such child from its parents, guardian or other person, having the lawful charge of such child, shall, on conviction, be imprisoned in the penitentiary not less than one nor more than five years."

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE