IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2019 Session

## STATE OF TENNESSEE v. DAVID ERIC LAMBERT

**Appeal from the Criminal Court for Sullivan County**
**No. S67078   James F. Goodwin, Jr., Judge**

_____

### No. E2018-02296-CCA-R3-CD

_____

Defendant, David Eric Lambert, appeals his conviction for attempted unlawful photography in violation of Tennessee Code Annotated section 39-13-605. Following his conviction, the trial court sentenced Defendant to serve six months in confinement. In this appeal as of right, Defendant asserts that: 1) the trial court erred by denying his motion to dismiss because the unlawful photography statute is unconstitutionally vague and his conduct did not constitute a crime; 2) the admission of his statement violated Rule 404(b) of the Tennessee Rules of Evidence; 3) the trial court erred by denying Defendant's requests for special jury instructions; 4) the trial court erred by instructing the jury on attempt as a lesser-included offense; and 5) the evidence was insufficient to support Defendant's conviction. We conclude that the trial court erred by admitting Defendant's statement to police, and the erroneous admission of the statement would entitle Defendant to a new trial. Because, however, the evidence adduced at trial was insufficient to support Defendant's conviction, the conviction is reversed and the case is dismissed with prejudice.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JJ., joined.

Stephen M. Wallace, District Public Defender; and Lesley A. Tiller and Dustin J. Franklin, Assistant District Public Defenders, for the appellant, David Eric Lambert.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily M. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Defendant was charged with unlawful photography in three separate cases involving three different victims. The incident in this case occurred at the Hobby Lobby in Kingsport on February 27, 2016. Defendant's motion to dismiss pertained to all three of his cases. We include only the facts pertinent to the case before us.

## *Motion to Dismiss*

Prior to trial, Defendant filed a motion to dismiss the charges in all three cases on the grounds that his "alleged actions occurred in public places where there is no expectation of privacy," and therefore Defendant's "alleged acts are not illegal under Tennessee law." Defendant also argued that the statute proscribing unlawful photography, Tennessee Code Annotated section 39-13-605, was unconstitutionally vague because the language of the statute "is so broad that it does not provide individuals with adequate notice of proscribed activity and does not provide law enforcement with sufficient guidance to protect against arbitrary and discriminatory enforcement."

At the April 12, 2017, hearing on Defendant's motion to dismiss, following the arguments of the parties, the trial court concluded that the statute was not unconstitutional because it was not "so vague that the defendant wouldn't know what conduct" was illegal given that the statute has other elements that impact whether the taking of a photograph qualifies as a criminal offense.

At the hearing, Detective Martin Taylor testified that he met with Defendant after receiving reports about "a stalking type incident" at Hobby Lobby. On March 24, 2016, Detective Taylor obtained a written statement from Defendant, which Detective Taylor read into evidence at the hearing. The statement read:

> This all started about four or five years ago when my father died of cancer. I began videoing in public. I like blonde haired females but have no preference really. I recently have been going to shopping centers in Kingsport and have filmed women in Hobby Lobby, Walmart, and Ross and the shopping center on East Stone Drive. I did not mean to scare anyone and only filmed the females for my own purposes. I just like using the video function on my phone. It's kind of like an obsession with the technological aspect of a phone. I have never posted any of the images I have taken on the internet or share with other people. I actually did not think I was doing anything wrong because everything was done in a public place however I realize this was not a good decision on my part. If it was not illegal it was definitely crossing moral boundaries.

- 2 -

. . . . I gave the officers permission to look through the phone. Today I am giving Detective Taylor permission to examine my phone for the videos I have stored on the phone. There should be around 20 videos on the phone of different females I have collected recently. I understand the seriousness of the charges against me and need help with the problems I have. I am willing to undergo treatment and with the willingness of the court will do what is necessary to get help for my problem. Again I am very sorry for all of this and want the women I videoed to know I never meant any harm and I apologize for my actions. This is a truthful statement.

Detective Taylor examined the photos and videos on Defendant's cell phone and found no photos or videos of any of the victims in any of the three Sullivan County cases.

Donna Brown, the victim in this case, testified that she was shopping with her sister, Melissa Bays, at the Hobby Lobby in Kingsport on February 27, 2016. Ms. Brown testified that Defendant followed them around the store "everywhere [they] went." She testified that he "would peek through things and peek around things . . . and [the sisters] couldn't shake him." Ms. Brown testified that at one point, Defendant was "uncomfortably close" to her, "like a foot maybe" away from her. Ms. Brown added that Defendant did not have her consent to follow her or take her photo. She testified that if Defendant captured her image on video or photograph, she would be "mad and embarrassed." Ms. Brown eventually confronted Defendant at the store and used her cell phone to take his photo, at which time Defendant left the store.

On cross-examination, Ms. Brown acknowledged that she assumed there were surveillance cameras inside Hobby Lobby capturing video of customers. She testified that she was wearing jeans or pants on the day of the incident. She testified that Defendant did not touch her or put his phone down her shirt or pants.

Melissa Bays testified that she saw Defendant appear to take a photo of Ms. Brown while Ms. Brown was bent over looking at a display. She testified that Ms. Brown was in a position that "would have show[n] like her cleavage maybe[.]" Ms. Brown and Ms. Bays both testified that they did not know Defendant.

As to this case, the trial court found that Defendant had "readily admit[ted] to videoing or filming or taking pictures with his phone of women in public." The trial court noted that Defendant "was probably within one foot" of Ms. Brown and that Ms. Bays testified that she observed Defendant "taking pictures of Ms. Brown both of her cleavage and buttock." The trial court ruled that Ms. Brown had a reasonable expectation

of privacy given the "very close proximity" from which Defendant was taking photos. The court noted, "even if you're in public [ ] you've got an expectation of privacy that you're not going to be photographed or filmed in your crotch or your rear end or your breasts . . . ." The trial court denied Defendant's motion as to the victim in this case.

*Motion to dismiss because Defendant's conduct did not violate statute*

Tennessee Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Tenn. R. Crim. P. 12(b)(1). Our supreme court has determined that Rule 12 "is identical to its federal counterpart," Federal Rule of Criminal Procedure 12, and has concluded that matters "substantially founded upon and intertwined with factual evidence of the alleged offense that will necessarily be introduced at trial . . . fall[] within the province of the ultimate finder of fact, and ruling " on such matters "should be deferred until trial." *State v. Vickers*, 970 S.W.2d 444, 447 (Tenn. 1998) (citations omitted). An "issue is 'capable of determination' under the analogous federal rule if 'the facts surrounding the commission of the alleged offense would be of no assistance in determining' the issue." *State v. Sherman*, 266 S.W.3d 395, 403 (Tenn. 2008) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Although those questions capable of determination tend to "raise questions of law rather than questions of fact," Rule 12 permits the trial court to "make findings of fact necessary to decide the questions of law presented by a pretrial motion so long as the factual findings are not intertwined with the general issue of guilt or innocence." *State v. Goodman*, 90 S.W.3d 557, 561 (Tenn. 2002) (citations omitted). "Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *Id*. (citing *Vickers*, 970 S.W.2d at 447; *State v. Burrow*, 769 S.W.2d 510, 512 (Tenn. Crim. App. 1989)). To this end, the trial court "may consider evidence beyond the face of the indictment" so long as the facts to be considered are "relevant only to the legal question presented by the defendant's motion, not to the general issue of guilt or innocence" and do not "qualify as 'factual evidence of the defendant's conduct at the time of the alleged offense.'" *Sherman*, 266 S.W.3d at 402 (quoting *Goodman*, 90 S.W.3d at 561). In any event, the trial court's factual findings must "not encroach upon the province of the jury." *Sherman*, 266 S.W.3d at 403 (citation omitted).

The trial court properly declined to consider Defendant's argument that his conduct did not encompass all of the elements of Tennessee Code Annotated section (hereinafter T.C.A. §) 39-13-605. Defendant's motion was essentially a pretrial challenge to the sufficiency of the State's evidence to support a conviction. This would

be "akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *Goodman*, 90 S.W.3d at 561. That procedure does not exist in criminal cases. *Id*.

*Constitutionality of T.C.A. § 39-13-605*

At the time of the offense in this case, T.C.A. § 39-13-605 provided:

(a) It is an offense for a person to knowingly photograph, or cause to be photographed an individual, when the individual has a reasonable expectation of privacy, without the prior effective consent of the individual, or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph:

(1) Would offend or embarrass an ordinary person if such person appeared in the photograph; and

(2) Was taken for the purpose of sexual arousal or gratification of the defendant.

(b) As used in this section, unless the context otherwise requires, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission of any individual.

(c) All photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed.

T.C.A. § 39-13-605(a)-(c) (2014). As indicated, the defendant challenged the constitutionality of T.C.A. § 39-13-605 on grounds that the phrase "when the individual has a reasonable expectation of privacy" is vague, essentially asserting a claim that T.C.A. § 39-13-605, due to its vagueness, failed to place him on notice that his conduct would violate the statute. The trial court concluded that the statute was not unconstitutional.

"Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional," *see Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) (citations

omitted), and "indulge every presumption and resolve every doubt in favor of the statute's constitutionality," *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A "vague statute is vulnerable to a constitutional challenge because it (1) fails to provide fair notice that certain activities are unlawful; and (2) fails to establish reasonably clear guidelines for law enforcement officials and courts, which, in turn, invites arbitrary and discriminatory enforcement." *State v. Pickett*, 211 S.W.3d 696, 702 (Tenn. 2007). "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally responsible for conduct which [they] could not reasonable understand to be proscribed.'" *State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).

"Despite the importance of these constitutional protections," our supreme court "has recognized the 'inherent vagueness' of statutory language . . . and has held that criminal statutes do not have to meet the unattainable standard of 'absolute precision.'" *Crank*, 468 S.W.3d at 23 (quoting *Pickett*, 211 S.W.3d at 704; *State v. McDonald*, 534 S.W.2d 650, 651 (Tenn. 1976)). "The vagueness doctrine does not invalidate every statute [that] a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words." *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990). When "evaluating a statute for vagueness," this court "may consider the plain meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language." *Crank*, 468 S.W.3d at 23 (citing *Lyons*, 802 S.W.2d at 592); see T.C.A. § 39-11-104 (stating that each statute must be "construed according to the fair import of its terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code").

Defendant correctly points out that the phrase "when the person has a reasonable expectation of privacy" is not defined in the statute. It is, however, a phrase commonly used in the law. The discussion of the existence of a reasonable expectation of privacy most often occurs in cases discussing the Fourth Amendment to the United States Constitution, but its use is not limited to that arena, and we can fathom no reason to ascribe the phrase as used in T.C.A. § 39-13-605 a meaning different from that it enjoys in every other legal context. It is well established that a person has a reasonable expectation of privacy when the person has "an actual, subjective expectation of privacy and . . . society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001) (citations omitted).

Utilizing the common understanding of the terms contained in T.C.A. § 39-13-605, we conclude that the statute does not "prohibit[] conduct 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Crank*, 468 S.W.3d at 22 (quoting *Pickett*, 211 S.W.3d at 704). Consequently, the trial court did not err by denying Defendant's constitutional challenge.

### *Evidence at trial*

Donna Brown testified that on February 27, 2016, she was shopping with her sister at the Hobby Lobby in Kingsport. Ms. Brown testified that she was "bent over" looking at "a display of trinkets." She noticed Defendant behind her, and Defendant walked away when she looked up at him. She testified that Defendant followed her and her sister around the store. She testified, "everywhere we would go, there he was." She testified that Defendant pointed his phone at them, and "he was scary." Ms. Brown and her sister became "really nervous." Defendant held his phone "down" and "in a lower position." Ms. Brown testified that it "went on for a long time . . . 45 minutes to maybe an hour." Ms. Brown approached a store associate because she was "afraid to go outside." Ms. Brown took out her cell phone and pointed it at Defendant and said, "You like taking pictures, let me take yours." Defendant left the store when Ms. Brown confronted him.

Ms. Brown testified that she did not give Defendant permission to take photos or video of her and that if Defendant had a video or photo of her, she would be embarrassed by it. She acknowledged that Hobby Lobby had security cameras in the store, but she testified that video taken by the store would not have embarrassed her "because . . . they're in the ceiling, they're not focusing in on certain parts of your body, you know."

On cross-examination, Ms. Brown testified that she was wearing "[j]eans and a top." She acknowledged that Defendant did not physically touch her, nor did Defendant put his camera down her shirt or pants. Ms. Brown posted the photos she took of Defendant on Facebook. She acknowledged that the photos were "shared" over 8,000 times. She testified, "I did that because I wanted to just warn the ladies out there to be careful." Ms. Brown acknowledged that she did not know whether Defendant, in fact, took a photo of her. She testified, "I think he took a picture of my breasts, and I think he took a picture of my butt." Ms. Brown testified that she would be embarrassed by someone having taken a photo of her body. She testified, "If someone wants to glance at it, that's fine, don't take a picture of it and take it home."

The defense introduced into evidence four photos of Ms. Brown that she had posted on her own Facebook page. The photos depict: 1) Ms. Brown is standing in front of a mirror with her backside reflected in the mirror, and she is wearing jeans and a shirt;

2) Ms. Brown is sitting on a stool, wearing jeans and a tank top, with her back toward the camera, and a tattoo on her shoulder is visible; 3) Ms. Brown is sitting beside a swimming pool, wearing a bathing suit, and her cleavage is visible; and 4) Ms. Brown is wearing a tank top, and her cleavage is visible. About the Facebook photos, Ms. Brown testified, "I had a choice . . . whether I wanted to put [those photos] on [Facebook] or not. Some of them might have been bad decisions, but it was my decision." She testified that she intended for people she knew to see the photos "for the most part," but she acknowledged that some photos were shared with the public.

Melissa Bays, Ms. Brown's sister, testified that she noticed Defendant following them around the store. Defendant had "his phone down low, like filming us." The women continued to shop, and Defendant followed them "like he was fixed" on them. Ms. Brown "got aggravated" and took a photo of Defendant, and Defendant left the store. Ms. Bays testified that Defendant appeared to be taking photos of Ms. Brown's breasts when Ms. Brown was "bent down looking at things." However, she acknowledged that she did not see the screen of Defendant's cell phone, and she did not know whether Defendant actually took any photos or videos of herself or Ms. Brown. Ms. Bays testified that she did not remember what kind of shirt Ms. Brown was wearing that day, and she did not know whether Ms. Brown's cleavage was visible.

Detective Martin Taylor received a report from Ms. Brown, and he contacted Defendant. On March 24, 2016, Detective Taylor obtained a written statement from Defendant. A redacted version of Defendant's statement was read to the jury. The statement read to the jury is as follows:

> [Blank space on redacted statement admitted as evidence.] I began videoing women in public. I like blonde haired females but have no preference. Recently, I have been going to shopping centers in Kingsport and have filmed women in Hobby Lobby [blank space on redacted statement admitted as evidence.] I did not mean to scare anyone and only filmed the females for my own purposes. I just liked using the video function on my phone. It is kind of like an obsession with the technological aspect of the phone. I have never posted any of the images I have taken on the Internet or shared with other people. I actually did not think I was doing anything wrong because everything was done in a public place. However, I realize this was not a good decision on my part. If it was not illegal, it was definitely crossing moral boundaries.
>
> [Blank space on redacted statement admitted as evidence.] It is a LG G2 phone with a silver case and blue sleeve underneath. [Blank space on

redacted statement admitted as evidence.]  Today, I am giving Det. Taylor permission to examine my phone for the videos I have stored on the phone.  There should be [blank space on redacted statement admitted as evidence] videos on the phone of different females I have collected recently.  I understand the seriousness of the charges against me and need help with the problems I have.  I am willing to undergo treatment [blank space on redacted statement admitted as evidence] will do what is necessary to get help for my problem.  Again, I am very sorry for all of this and want the women I videoed to know I never meant any harm and apologize for my actions.  This is a truthful statement.

Detective Taylor searched Defendant's cell phone but did not find any images of Ms. Brown.  Detective Taylor testified that the amount of deleted data that can be retrieved depends on the software updates available.  He testified, "sometimes you get a partial data dump, sometimes you get a hundred percent so, it's kind of hit or miss.  Detective Taylor reviewed Hobby Lobby surveillance video from the date of the incident and confirmed that Defendant entered the store on that date, but the store did not provide any video of Defendant inside the store.

Defendant did not testify or present any other proof.

### Defendant's statement to police

Defendant contends that the trial court erred by admitting his statement into evidence, arguing that its admission violated Tennessee Rule of Evidence 404(b)'s prohibition on propensity evidence.  The State contends that Defendant has waived consideration of this issue by failing to provide an adequate record on appeal.

Defendant was charged in three separate Sullivan County cases with unlawful photography, and the motions filed by Defendant covered all three of the cases.  In his motion in limine, Defendant moved the trial court for a hearing out of the presence of the jury to determine the admissibility of certain evidence, including the statement he provided to Detective Taylor and any evidence of other bad acts committed by Defendant.  The charge in case number S67,079 went to trial before the charge in this case, and the trial court held a hearing on the admissibility of Defendant's statement prior to the beginning of that trial.

During the hearing, Defendant argued that the statement violated Rule 404(b)'s prohibition on propensity evidence, arguing that his general admission to "filming women" was not a specific admission of the charged offenses.  The State conceded that Defendant's statement contained admissions that "could be considered referencing prior

bad acts" but argued that "they are highly relevant and probative of elements that we would have to prove . . . including the identity of the defendant, his intent in committing the crime." The State contended that, because it had no video or photograph of the victim purportedly taken by the defendant, the defendant's admission "that he videos women in public, that he has a preference for blonde-haired females . . . that he goes into shopping centers in Kingsport" established his identity as the perpetrator. The State also argued that Defendant's admission that he took the videos because he was obsessed with the technology available on his cellular telephone established his intent and that his admission that his actions crossed "moral boundaries" established that he acted for the purpose of sexual gratification as required by T.C.A. § 39-13-605.

The trial court concluded that the evidence was admissible on the issues of intent and motive. The court also ruled that the probative value of the statement on these issues was not outweighed by the danger of unfair prejudice. The court ordered that the statement be redacted and marked a copy of the statement with the necessary redactions.

We begin by noting that Defendant's statement does not contain any admission to wrongdoing specific to this case. He admitted to filming women in Hobby Lobby, but did not state a timeframe other than "recently." He did not admit to filming Ms. Brown in this case. Other than that, his statement contains a general admission that he had been using his cellular telephone to videotape women in the Kingsport area. The admission of this evidence of other bad acts by Defendant is governed by Tennessee Rule of Evidence 404(b).

Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). To admit such evidence, the rule specifies four prerequisites:

>    (1) The court upon request must hold a hearing outside the jury's presence;
>
>    (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
>    (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

> (4)    The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice;

*Id*.  When, as here, the trial court substantially complies with the procedural requirements of Rule 404(b), this court will overturn the trial court's ruling only when there has been an abuse of discretion.  *See State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005).

The rationale underlying the general rule is that admission of such evidence carries with it the inherit risk of the jury's convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than upon the strength of the evidence.  *Thacker*, 164 S.W.3d at 239.  Nothing in this rule prohibits its application to statements made by the defendant, and although evidence of other bad acts "usually does not come in the form of statements or confessions made by the defendant, there exists no valid reason to make an exception to the requirements [of Rule 404(b)] for prior bad act evidence disclosed in a defendant's confession."  *Id*.  Despite Rule 404(b)'s general proscription on propensity evidence, "Tennessee recognizes three instances in which evidence of uncharged crimes may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense."  *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996) (citations omitted).

As was the case in *McCary*, "[n]one of the exceptions are present in this case."  *Id*.  Defendant's identity was not an issue because he was captured on the Hobby Lobby surveillance video and conclusively identified by Ms. Brown, including by photographs of Defendant taken by Ms. Brown at the Hobby Lobby.  Additionally, Defendant did not assert that he was not the man featured in the video but instead "characterized his conduct, essentially, as non-criminal."  *Id*.  Similarly, the statement was not admissible to prove motive because Defendant did not make the issue of motive material.  Moreover, the statement was not admissible, as the State argued, to prove that Defendant acted for the purpose of sexual gratification because nothing in the statement suggests that Defendant's conduct was motivated by a desire for sexual gratification.  If anything, the statement belies such a motivation because Defendant claimed he was compelled to make video recordings by his obsession with the technical functions of his cellular telephone.  That Defendant, a man, admitted that he had been videotaping women, even blonde women in particular, does not, without more, evince of a motive of sexual gratification.

Additionally, the statement was not admissible to establish a "common scheme or plan."  As our supreme court has recognized, this "exception, although recognized in Tennessee, is often misunderstood" because it is, in reality, "a vehicle for admitting other nearly identical crimes *when the identity of the defendant* is in issue."  *Id*. (citation omitted) (emphasis added).  Because identity was not a material issue in this case, there

was no need to resort to the common scheme or plan notion as a means of supplying the identity of the perpetrator. *See id*.

Finally, Defendant did not assert either accident or mistake of fact as a defense to the charged offense, so the admission of his statement was not necessary to rebut either defense. Consequently, Defendant's statement was not admissible "on any material issue in this case. It's character, therefore, was that of 'propensity evidence,'" and, as a result, it should have been excluded pursuant to Rule 404(b). *McCary*, 922 S.W.2d at 114; *see also id*. at 515 (holding that McCary's personal diary entries expressing romantic feelings for several young men "constituted highly prejudicial 'propensity' evidence" and should not have been admitted when they did not reference any of the victims or witnesses at trial). Indeed, the State's arguments in the trial court establish that the State wanted to admit Defendant's statement to prove that because he had videotaped other women, he had necessarily videotaped or photographed Ms. Brown in this case. Indeed, the State argued that Defendant's admission to videotaping other women proved that either a photograph or video existed in this case, despite that no video or photograph of Ms. Brown was ever recovered. That is precisely the type of inference prohibited by Rule 404(b).

The evidence of Defendant's guilt was not overwhelming and was, as will be discussed below, not sufficient to support his conviction. Given the dearth of evidence supporting Defendant's guilt, we are constrained to conclude that the erroneous admission of Defendant's statement cannot be classified as harmless. Were we not reversing Defendant's conviction and dismissing the charge based upon the insufficiency of the evidence, we would reverse his conviction and remand it for a new trial based upon the erroneous admission of his statement.

### Jury instructions

*Special jury instructions*

Defendant contends that the trial court erred by denying his motions for special jury instructions. The State responds that the trial court properly instructed the jury.

Generally, the trial court has a duty to give a correct and complete charge of the applicable law. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). The right to a correct and complete charge is constitutional, and each issue of fact raised by the evidence should be submitted to the jury with proper instructions. *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). A trial court's instructions "must describe and define each element of the offense or offenses charged." *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014).

Special instructions are intended "'to supply an omission or correct a mistake made in the general charge, to present a material question not treated in the general charge, or to limit, extend, eliminate, or more accurately define a proposition already submitted to the jury.'" *Dorantes*, 331 S.W.3d at 390 (quoting *State v. Cozart*, 54 S.W.3d 242, 245 (Tenn. 2001)). It is error to refuse a special instruction only when the standard charge, read as a whole, does not fully and fairly provide the applicable law. *State v. Adams*, 405 S.W.3d 641, 661 (Tenn. 2013). Jury instructions must be reviewed in their entirety, with no phrase examined in isolation. *State v. Rimmer*, 250 S.W.3d 12, 31 (Tenn. 2008). The sufficiency of jury instructions is a question of law that this court must review de novo with no presumption of correctness. *Clark*, 452 S.W.3d at 295 (citing *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013).

Prior to trial, Defendant filed two motions pursuant to Rule 30 of the Tennessee Rules of Criminal Procedure, requesting that the trial court give special jury instructions: 1) defining when an individual has a reasonable expectation of privacy, and 2) stating that "[i]t is not illegal simply to take a photograph of someone without their permission in a public place" and that the State must prove all of the elements of the offense.

The unlawful photography statute was amended in 2018 to add the following language to T.C.A. § 39-13-605(b):

> (2) As used in this section, an individual has a reasonable expectation of privacy, regardless of the location where a photograph is taken, if:
>
> (A) The photograph is taken in a manner that would offend or embarrass a reasonable person; and
>
> (B) The photograph depicts areas of the individual's body, clothed or unclothed, that would not be visible to ordinary observation but for the offensive or embarrassing manner of photography.

T.C.A. § 39-13-605(b)(2) (2018); see also 2018 Pub. Ch. 866, § 1, 110th Gen. Assembly.

The language added to the statute in 2018 was not contained in the version of the statute in effect at the time of Defendant's conduct in 2016. See T.C.A. § 39-13-605 (2014). Defendant's special jury instruction request used the exact language from the 2018 amendment to define when an individual has a reasonable expectation of privacy. The trial court denied Defendant's request "because that's not what the law was in 2016."

- 13 -

Defendant acknowledges that the amendment was not in effect at the time of his offense. However, Defendant contends that the amendment offers "clear guidance" about the legislative intent of the statute, and Defendant asserts that the trial court's denial of his request "denied the jury the opportunity to have the law fully and fairly stated to them." The trial court also denied Defendant's other request for a special jury instruction that it is "not illegal simply to take a photograph of someone without their permission in a public place" and instructing the jury that the State must prove all the elements of the offense.

We conclude that the language contained in the 2018 amendment was not necessary to provide a correct and complete charge of the law as it existed in 2016. The jury charge was not transcribed. The jury charge as written was made an exhibit and provided:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> 1. that the defendant photographed an individual;
>
>    and
>
> 2. that the photograph would offend or embarrass an ordinary person if such person appeared in the photograph;
>
>    and
>
> 3. that the photograph was taken for the purpose of sexual arousal or gratification of the defendant;
>
>    and
>
> 4. that the photograph was made without the prior effective consent of the individual photographed;
>
>    and
>
> 5. that the individual in the photograph had a reasonable expectation of privacy;
>
>    and

- 14 -

6.     that the defendant acted knowingly in taking the photograph[.]

The jury instructions also stated that "[t]he state must have proved beyond a reasonable doubt all of the elements of the crime charged . . . ." The record shows that the trial court gave a complete and accurate charge of the law. Defendant is not entitled to relief on this issue.

*Attempt*

Defendant also contends that the trial court erred by instructing the jury on the offense of attempted unlawful photography without consent as a lesser included offense. Defendant argues that without any photo or video, the jury could not determine whether the individual had a reasonable expectation of privacy, whether the photograph would offend or embarrass an ordinary person, or whether the photograph was taken for the purpose of Defendant's sexual arousal or gratification. The State argues that the evidence at trial fairly raised the issue of the completed offense.

Whether the trial court properly instructed the jury on a certain offense as a lesser included offense of the charged offense is a mixed question of law and fact. *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015) (citing *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001)). Accordingly, the standard of review is de novo with no presumption of correctness. *Id*.

As stated above, it is "well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *Dorantes*, 331 S.W.3d at 390. This "'includes the right to jury instructions on each and every lesser included offense embraced within the charged offense(s) and supported by the proof.'" *Thorpe*, 463 S.W.3d at 859 (quoting *State v. Davis*, 266 S.W.3d 896, 902 (Tenn. 2008)).

An offense is a lesser included offense if the offense "is an attempt to commit the offense charged or an offense that otherwise meets the definition of a lesser included offense in subdivision (f)(1)[.]" T.C.A. § 40-18-110(f)(3). Thus, attempted unlawful photography without consent is clearly a lesser included offense of unlawful photography without consent, the offense charged in this case. The trial court is required to charge a lesser included offense only when "the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense." T.C.A. § 40-18-110(a). In order to make this determination, the trial judge views the evidence "in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of such evidence." *Id*. The trial judge shall also

- 15 -

determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

Below, we conclude that the evidence was insufficient to support Defendant's conviction. Therefore, the issue of whether the trial court found sufficient evidence to support a jury instruction on attempt is moot.

### *Sufficiency of the evidence*

Defendant argues that a rational juror could not have found him guilty beyond a reasonable doubt of attempted unlawful photography. He asserts that the victim could not have had any reasonable expectation of privacy in any of the locations where photographs were allegedly taken. Also, Defendant argues that State did not present any photographs for the jury to evaluate to determine whether the photograph would offend or embarrass the victim and whether a photograph was taken for sexual arousal or gratification. The State responds that the evidence was sufficient to sustain Defendant's conviction.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and the weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id*. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

At the time of Defendant's conduct, it was an offense "for a person to knowingly photograph, or cause to be photographed an individual, when the individual has a reasonable expectation of privacy, without the prior effective consent of the individual" if the photograph "[w]ould offend or embarrass an ordinary person if such person appeared

in the photograph" and the photograph "[w]as taken for the purpose of sexual arousal or gratification of the defendant." T.C.A. § 39-13-605(a)(1)-(2) (2014). Under this statute, "'photograph' means any photograph or photographic reproduction, still or moving, or any videotape." T.C.A. § 39-13-605(b). "'Effective consent' means assent in fact, whether express or apparent," and consent is not effective when "given by a person who, by reason of . . . intoxication[ ] is known by the defendant to be unable to make reasonable decisions regarding the subject matter[.]" *Id*. § 39-11-106.

The State correctly notes that, as relevant in this case, a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, acts "with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). "Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense." *Id*. § 39-12-101(b). Also, as recognized by the State, even if certain evidence is erroneously admitted (as Defendant's statement in this case), this court conducts its analysis of the sufficiency of the evidence based on inclusion of that erroneously admitted evidence. Defendant's statement actually supports his assertion that the evidence is insufficient to support his conviction.

Viewed in the light most favorable to the State, the evidence established Defendant followed Ms. Brown and her sister around the inside of Hobby Lobby, and he held his cell phone out in a manner that led them to believe he was taking photos or video of Ms. Brown. At all times during the encounter, Ms. Brown was fully clothed in a public place.

In this case, where an attempt is charged, the State was required to prove beyond a reasonable doubt that Defendant had the specific intent to complete a course of action that would constitute the offense. In other words, Defendant must have had the specific intent to commit the originally charged offense of unlawful photography as defined above. *State v. Mateyko*, 53 S.W.3d 666, 674 (Tenn. 2001). In his statement erroneously admitted into evidence, Defendant mentions nothing specific about the specific incident for which he was on trial, but he states that he did not believe he was doing anything wrong because everything was done in a public place. He admitted taking photographs was not a good decision, and it crossed moral boundaries even if not illegal.

One of the elements of the offense charged in the presentment is that the victim had a reasonable expectation of privacy. Accordingly, to be guilty, Defendant must have had the specific intent to photograph Ms. Brown while she had a reasonable expectation of privacy. The circumstances of this case show that no such expectation existed (as set

forth in the other two cases involving Defendant, No. E2018-02282-CCA-R3-CD and No. E2018-02298-CCA-R3-CD). A photographer, such as Defendant herein, would reasonably perceive this. Thus, the evidence is insufficient to support the conviction, the conviction is reversed, and the charge is dismissed.

## CONCLUSION

Because the evidence was insufficient to sustain the conviction, the judgment of the trial court is reversed and the charges are dismissed with prejudice. Even if the evidence had been sufficient, the trial court erred by admitting Defendant's statement into evidence, and this is reversible error. If this court was not dismissing the charges, Defendant would be entitled to a new trial.

_____
THOMAS T. WOODALL, JUDGE